JAMES P. FRITZE, for use, etc.

*v.*

THE EQUITABLE BUILDING AND LOAN SOCIETY.

*Opinion filed June 21, 1900.*

1. LOAN ASSOCIATIONS—*act of 1879 does not authorize amendment of by-laws.* Under the Loan Association act of 1879, (Laws of 1879, p. 83,) requiring a copy of the by-laws to be made a part of the certificate of organization, which must be recorded in the county where the principal office of the association is located, a loan association is without power to subsequently amend its by-laws, notwithstanding the original by-laws provide for amendment.*

2. SAME—*when contract by loan association is ultra vires.* A contract by a loan association, based wholly upon a by-law passed after complete organization, and hence invalid as not being within the power of the association under the act of 1879, is *ultra vires.*

3. CORPORATIONS—*when rule of estoppel to plead ultra vires has no application.* The rule that a corporation is estopped to plead *ultra vires* in defense to a contract fully performed by the other party in good faith, has never been held to apply where the contract is illegal or prohibited by statute, or against public policy.

4. SAME—*director not entitled to compensation unless legally authorized.* A director of a corporation is not entitled to compensation for his usual services unless such compensation is fixed before such services were performed, by a legal by-law or resolution.

5. CONTRACTS—*when contract for services by officer of loan association cannot be enforced.* The amount due under a contract for services as manager of agencies for a loan association cannot be recovered where such manager was vice-president and director of the association at the time of the making of the contract, which was executed under an unauthorized by-law, for the passage of which and for the ratification of the contract he voted as a director, thus giving himself compensation for services which, as vice-president, he was required, under the law, to perform without compensation.

*Equitable Building and Loan Ass. v. Fritze,* 83 Ill. App. 18, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. T. M. SHAW, Judge, presiding.

*NOTE.—The act of 1893, concerning amendment of by-laws of loan associations, was passed after the facts in this case arose.

This is an action of assumpsit, brought by the appellant, James P. Fritze, for the use of M. N. Gish, against the appellee, the Equitable Building and Loan Society of Peoria, to recover for services alleged to have been rendered to appellee under a written contract. The declaration as finally amended consists of a special count upon the contract and the common counts. The defendant filed the general issue and three special pleas. The second plea was demurred to, and to it, as finally amended, a replication was filed, making an issue upon the second amended plea. The third and fourth amended pleas were demurred to; and, the demurrers being sustained, defendant elected to abide by its third and fourth amended pleas.

By stipulation between the parties it was agreed that the issues, whether of law or of fact, should be tried by the court without a jury. Upon the trial, the court gave and held one proposition of law for the defendant below, the appellee here, and marked as refused three propositions of law submitted by the defendant below. The court found the issue for the plaintiff below, the appellant here, and assessed his damages at the sum of $1660.00. The motion to set aside the finding and for a new trial was overruled, and judgment for $1660.00 was rendered in favor of appellant and against appellee upon the finding so made.

Thereupon the defendant below, the Equitable Building and Loan Society of Peoria, took an appeal to the Appellate Court. The Appellate Court rendered a judgment reversing the judgment of the circuit court without remanding the cause. The judgment of the Appellate Court is: "It is considered by the court that, for that error and others in the record and proceedings aforesaid, the judgment of the circuit court of Peoria county in this behalf rendered be reversed, annulled, set aside and wholly for nothing esteemed." The present appeal is prosecuted from the judgment of reversal so entered by the Appellate Court.

The declaration alleges that the appellee, as party of the first part, on May 2, 1892, and at its office in Peoria, made a written contract with appellant, Fritze, as party of the second part, the material part of which is as follows: "Witnesseth, that the said party of the first part does hereby employ the party of the second part as manager of agencies, to perform the services as designated in section 6 of article 3 of the society's by-laws. The said second party shall receive as his compensation out of the expense fund of said society, as such manager of agencies, for his services of the year, and in liquidation of all claims, the sum of $300.00 monthly and two cents per share per month during the year of this contract of each and every one of the monthly payments actually made upon every share of stock subscribed to the Equitable Building and Loan Society in the twenty-fifth to the thirty-sixth series, inclusive. The pay for these services shall be due and payable monthly, in sums not less than one cent per share per month of all the shares in good standing in the society, and as much more as the expense fund will admit, until such salary and commissions, accrued under this contract, are paid in accordance with the provisions of the same. The first party agrees to pay all the necessary traveling expenses of the second party when necessarily traveling in the interest of the society. This contract of employment to extend and be in full force and effect for one year from May 2, 1892."

The declaration further avers that, on May 14, 1892, said contract was ratified and approved by the society through its board of directors, and ordered spread upon the minutes; that said section 6 of article 3 of the by-laws is as follows: "The board of directors may appoint a manager who shall, under their direction, appoint all agents, and their compensation shall be paid out of the expense fund. He shall control and manage the agency system of the society. He shall perform such other duties as the board of directors may require, and shall

attend to all publications, printing and advertising. His term of office and compensation for said employment shall be fixed by written contract by the board of directors, and shall be paid out of the expense fund."

The declaration then avers that, on February 15, 1893, Fritze had performed the services required of him under the contract, and had an accounting and settlement with the society of the amount due to him thereunder, to-wit: $2000.00, part of which was paid by the society to Fritze, leaving a balance of $1790.00 due to him, which balance Fritze is alleged to have assigned to Moses N. Gish, the usee herein, by written assignment endorsed upon the contract; that the society had notice and knowledge of said assignment, and promised to pay the same to said usee; that ample sums of money were collected by the society under section 4 of article 1 of the by-laws to pay him according to the provisions of said contract; that section 4 of article 1 of said by-laws is as follows: "Every stockholder shall pay in advance a membership fee of $1.00 on each share subscribed, which, together with eight cents per share per month on each monthly installment, shall constitute the expense fund which the directors shall cause to be used in the vigorous and competent prosecution and extension of the business of the association so far as practicable." The declaration further avers that the membership fee, together with the eight cents per share upon each installment collected by the society under said section 4 of article 1, was turned into and became a part of the expense fund for the uses specified in said section 4 of article 1, and the expense fund thereby became and was amply sufficient on February 15, 1893, and at various other times before the beginning of this suit, to pay the sum of $1790.00 due plaintiff as aforesaid.

The second amended plea alleged, that the only cause of action in the declaration is that upon the contract in the first count thereof; that, at the time of making the contract and performing the alleged services, the defend-

ant society was a corporation organized and doing business under "An act to enable associations of persons to become a body corporate to raise funds to be loaned only among the members of such association," in force July 1, 1879; that, at that time, Fritze was vice-president of the defendant corporation and a director and officer thereof; that, under the charter and by-laws of the society, the directors thereof had no power or authority to provide for an agency system of the society, or to provide for, or appoint agents other than the officers and directors named by law, or to appoint a manager of agencies; and that, therefore, the society had no power or authority to enter into the contract set up in the first count of the declaration, and that the same is null and void. The replication to the second amended plea sets up that, at the time of the making of the contract and performing of the services thereunder, there was in force a valid by-law of the society, to-wit: said section 6 of article 3 of the society's charter and by-laws, by virtue of which the society was duly empowered and authorized to make said contract.

The third amended plea avers, that the only cause of action in the declaration is that set up in the first count thereof; that, at the time of making the contract and performing the services aforesaid, the society was a corporation organized under said act of July 1, 1879; that at that time the appellant, Fritze, was vice-president of the corporation and an officer thereof; that, under the charter and by-laws, it was the duty of its president, among other things, that he should generally supervise the affairs of the association, and that, in case of his inability to act, the vice-president should perform all the duties incumbent upon the president during the time of such disability; that the duties thus imposed upon the president, and, in case of his disability, upon the vice-president, were in part the same duties and services provided for in the said contract, and which the said Fritze

agreed to perform in and by said contract; that, by rea-son of the premises, it was the duty of said Fritze to ren-der the said services as vice-president and as an officer of the society without compensation; and that, therefore, it was beyond the power and authority of the society to execute said contract, and the same is null and void.

The fourth amended plea avers, in addition to the averments contained in the third amended plea, that, at the time of making the contract and of performing the services alleged, Fritze was vice-president and a director and officer of the society; that it was the duty of the president, among other things, to exercise general super-vision over the affairs of the association, and it was the duty of the vice-president, in the absence or disability of the president, to perform said duties and exercise said supervision over the affairs of the association; that, in and by the charter and by-laws of the society, the di-rectors shall hold a meeting on the first Tuesday of each month at 7:30 o'clock P. M., at which times all the money in the treasury, belonging to the loan fund, shall be of-fered, and bids received therefor, and the stockholder, that shall bid the highest premium for the preference or priority of the loan, shall be entitled to receive the loan of $100.00 for each share of stock held by him; that it was also the duty of said directors to supervise the mak-ing of all loans and the taking of security therefor; that, under the provisions of the charter and by-laws, the board of directors shall execute all their corporate pow-ers by a vote at properly constituted meetings, and all actions taken shall be duly recorded in the journal of their proceedings; that said duties of the president, or vice-president in his stead, and directors of said corpora-tion, are, in part, the same duties and services provided for in said contract, and which Fritze agreed to perform therein; that, by reason of the premises, it was his duty to render said services as vice-president and as officer and director of the corporation without compensation;

and that, therefore, it was beyond the power and authority of the society to make and execute the said contract, and the same is null and void.

The proposition of law given and held by the trial court for the present appellee, the defendant below, is as follows:

"The court holds as the law of this case that the defendant is not estopped to set up in defense that it had no power to amend its charter and by-laws and make the contract in evidence, and this is the law, even though there has been performance on the part of the plaintiff, Fritze, of the alleged contract."

The first and second propositions of law, submitted by the defendant below, and which were refused by the trial court, are as follows:

1. "The court holds as the law of this case that the defendant had no power or authority to amend its charter and by-laws by providing for its system of agencies and a manager thereof, as mentioned in the alleged amendment in section 6 in evidence, and that said section 6 is null and void.

2. "The court holds as a matter of law that the defendant has no power or authority to amend its charter and by-laws granted in its original certificate of incorporation, and that such alleged amendments in evidence are null and void."

The appellee was organized in March, 1890, under said act of July 1, 1879. At its meeting to organize, it elected Fritze a director for three years, and adopted a charter and by-laws which were reported to the Secretary of State, and a copy thereof was attached to the certificate of organization, issued by that officer. The statement, made under section 1 of the act, declared the location of the society to be in Peoria. Section 1 of article 10 of the by-laws provided as follows: "These by-laws may be amended at any special or annual meeting of the stockholders by a majority vote of all the stock of the associa-

tion subscribed duly represented, but no such amendment shall alter or affect any existing contract or certificate already made without the assent of the parties interested." By section 4 of article 9 of the by-laws, it is provided that "members present in person or by proxy duly represented, owning a majority of the stock issued, shall constitute a quorum at any annual or special meeting of the association."

At an annual meeting of the stockholders on April 21, 1892, 6213 shares were represented, and it was determined that 6166 shares constituted a quorum. At that meeting Fritze offered an amendment to the by-laws, to-wit: the section 6 of article 3 as above quoted; and the by-law was adopted at that meeting; two days later, at the annual meeting of the directors, to-wit: on April 23, 1892, Fritze was elected vice-president for the ensuing year, and so acted for that year. One week later, to-wit: on April 30, 1892, at a meeting of the directors, a motion was made that, by virtue of said new by-law, Fritze be appointed manager of agencies for one year from May 2, 1892, to May 2, 1893, and that his compensation for services for the year, etc., be as stated in the contract above set forth. This motion was carried, and Fritze, with the other four directors, voted for it. The contract of May 2, 1892, as above set forth, was then prepared and signed, designating Fritze as manager of agencies, etc. This contract was presented to the board of directors, and approved on May 14, 1892, and Fritze voted for its approval with the other directors.

Fritze acted as the manager of agencies from May 1, 1892, to May 1, 1893. He terminated his connection with the society May 1, 1893; and was paid by it upon said contract for services during the year $3129.06. The books of the society, as kept by those holding office at that time, say that there was still due to him, as manager of agencies, $1660.00, and the present suit is brought to recover this balance.

DAN R. SHEEN, and A. KREISMAN, for appellant:

A corporation may terminate an *ultra vires* contract and thereafter escape liability under it, but must account for all benefits received under such contract. *McCormick* v. *Bank,* 162 Ill. 100; *Kadish* v. *Loan Ass.* 151 id. 531; *Pullman Car Co.* v. *Transportation Co.* 171 U. S. 138; *Building Society* v. *Crowell,* 65 Ill. 454; *Darst* v. *Gale,* 83 id. 141; *Diversey* v. *Smith,* 103 id. 339; *Heims Brewing Co.* v. *Flannery,* 137 id. 318; *Benefit Ass.* v. *Blue,* 120 id. 128; *National Brewing Co.* v. *Ahlgren,* 63 Ill. App. 478.

A director may deal fairly with a solvent corporation of which he is a director. So may a vice-president. *Higgins* v. *Lansing,* 154 Ill. 367; *Railway Co.* v. *Carson,* 151 id. 449; *Harts* v. *Brown,* 77 id. 226; *Cheney* v. *Railway Co.* 68 id. 575; *O'Donnell* v. *Steel Co.* 33 Ill. App. 330; Morawetz on Corporations, sec. 527.

The terms and provisions of the contract govern the compensation. *Kadish* v. *Loan Ass.* 151 Ill. 531; *Brigham* v. *Hawley,* 17 id. 40; *McConaughy* v. *Mahannah,* 28 Ill. App. 169; *McClelland* v. *Snider,* 18 Ill. 58; *Sewing Machine Co.* v. *Bulkley,* 48 id. 194.

Corporations may ratify a contract the same as individuals may. *Ashleyville Steel Co.* v. *Illinois Steel Co.* 60 Ill. App. 190; *Railway Co.* v. *Carson,* 151 Ill. 449.

WINSLOW EVANS, (JOHN J. CROWDER, of counsel,) for appellee:

The charter of a corporation is the measure of its powers, and the enumeration of these powers implies the exclusion of all others. *Thomas* v. *Railroad Co.* 101 U. S. 71.

No provision is contained in the act of 1879 authorizing or permitting the amendment of the by-laws of a loan association, which are a part of the society's articles of incorporation, by any act of the society itself, either at a stockholders' meeting or a directors' meeting. Laws of 1879, pp. 83, 84-87.

No authority or power was given any loan association organized under the act of 1879, by its directors or its stockholders, to fix or regulate the compensation of any of its officers until the amendment of 1897, and then it was only provided that the directors might annually fix and determine the compensation of the secretary and treasurer when the same was not provided for in the by-laws. Laws of 1897, p. 167, sec. 5 *a.*

If a power or purpose of incorporation is expressed in the certificate issued by the Secretary of State that is not authorized by the act under which the corporation is incorporated, such additional power or authority is a nullity, and all acts done under it are void. *Railway Co.* v. *Railway Co.* 130 U. S. 1; *Insurance Co.* v. *Kamper*, 73 Ala. 325; Reese on Ultra Vires, sec. 3.

A contract or act of a corporation which is *ultra vires* in the proper sense,—that is to say, outside the object of its creation, as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature,—is not voidable only, but wholly void and of no legal effect; and in such case, even though there has been full performance, neither party to such contract can be estopped by assenting to it or by acting upon it to show that it was void, and no recovery can be had upon it. *Transportation Co.* v. *Pullman Car Co.* 139 U. S. 24; *Davis* v. *Railway Co.* 131 Mass. 264; *Railway Co.* v. *Riche*, 7 H. of L. 653; *McCormick* v. *Bank*, 162 Ill. 100; 165 U. S. 538; *American Trust Co.* v. *Railroad Co.* 157 Ill. 641; *Durkee* v. *People*, 53 Ill. App. 396; *Bank* v. *Kennedy*, 167 U. S. 362; *Lucas* v. *Transfer Co.* 70 Iowa, 541; *Railroad Co.* v. *Railroad Co.* 5 Am. Law Reg. 733; *Marble Co.* v. *Harvey*, 92 Tenn. 115.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The first question, presented by the record in this case, relates to the validity of the amendment to the by-laws, adopted on April 21, 1892, and quoted as section 6

of article 3 of the by-laws in the statement preceding
this opinion.  If this by-law was invalid, then the office
of manager of agencies did not lawfully exist, and the
appointment of the appellant, Fritze, as such manager
of agencies, and the contract made with him on May 2,
1892, were equally invalid.

Section 1 of the act of July 1, 1879, relating to build-
ing and loan associations, provides for the filing in the
office of the Secretary of State of a statement, setting
forth the name of the proposed corporation, its capital
stock, its location and its duration; and that the Secre-
tary of State shall thereupon issue to the persons, mak-
ing said statement, a license as commissioners, to open
books for subscription to the capital stock of the corpo-
ration.   Section 2 of the act provides, that, as soon as
one hundred shares or more of the capital stock shall
be subscribed, the commissioners, upon notice given as
therein directed, shall convene a meeting of the subscrib-
ers "for the purpose of electing directors, adopting a
charter and by-laws and the transaction of such other
business as shall come before them." Section 3 of the act
provides as follows:   "The commissioners shall make a
full report of their proceedings, including therein a copy
of the notice provided for in the foregoing section, a copy
of the subscription list, a copy of the charter and by-laws
adopted by the association and the names of the directors
elected and their respective terms of office, which report
shall be sworn to by at least a majority of the commis-
sioners, and shall be filed in the office of the Secretary
of State.   The Secretary of State shall thereupon issue
a certificate of the complete organization of the corpora-
tion, making a part thereof a copy of all papers filed in
his office in and about the organization of the corporation
and duly authenticated under his hand and seal of State;
and the same shall be recorded in the office of the recorder
of deeds in the county in which the principal office of such
company is located.  Upon the recording of said copy, the

corporation shall be deemed fully organized and may proceed to business," etc. (1 Starr & Curt. Stat.—1st ed.— p. 630.)

It will be noticed, that the charter and by-laws of the corporation are required to be adopted at the meeting of subscribers provided for in section 2 of the act. A copy of the charter and by-laws, thus adopted by the association, is required to be included in the report of the proceedings to be sworn to and filed in the office of the Secretary of State. The copy of the charter and by-laws, thus required to be reported and filed, is also required to be made a part of the certificate of organization of the corporation, which is issued by the Secretary of State. As the by-laws must thus be a part of the original certificate of organization, and must be recorded in the office of the recorder of deeds in the county in which the principal office is located, the company is necessarily without the power, under the act of July 1, 1879, to subsequently amend its by-laws. If all the by-laws were required to be a part of the original certificate of organization, there could be no by-laws that were not a part of that certificate. The corporation was not to be deemed fully organized, and could not proceed to business, until a copy of the certificate of organization, containing the charter and by-laws, was recorded as directed by section 3 of the act. A subsequent amendment to the by-laws, passed after the certificate of organization had been issued and recorded, would be the adoption of a by-law not authorized or sanctioned by the act, because it could not be a part of the original certificate of organization.

The Equitable Building and Loan Society of Peoria was organized in March and April of 1890. Its original certificate of organization, with the charter and by-laws adopted by it at the meeting provided for in section 2 of the act, was issued by the Secretary of State on April 5, 1890. This certificate of organization, with a copy of the charter and by-laws attached, was filed with the recorder

of deeds in Peoria county on April 7, 1890. By the documents on file in the office of the Secretary of State and on record in the office of the recorder of deeds of Peoria county, persons dealing with the corporation were notified that the by-laws were such as they were shown to be in the office of the Secretary of State and in the office of the recorder of deeds of Peoria county. The amendment to the by-laws, known as section 6 of article 3, which provided for the appointment of a manager of agencies, was not passed until April 21, 1892, long after the corporation had been organized and had proceeded to business under the by-laws adopted in March and April, 1890. It follows that the by-law of April 21, 1892, giving the board of directors power to appoint a manager of agencies, such as is described in section 6, is invalid as being *ultra vires* and beyond and in excess of the charter powers of the corporation. The language of the act of July 1, 1879, excludes the idea, that corporations organized thereunder, could make amendments to their by-laws after their organization.

Nowhere in the act of 1879 is power given to associations, organized thereunder, to make amendments to their by-laws. No express power for that purpose is conferred by the act, nor can it be said that there is any implied power, under the provisions of the act, to make such amendments. The implication of any such implied power is negatived by the requirement, that the by-laws must be made a part of the original certificate of organization, and filed and recorded in the manner prescribed by the act. The permission to pass such by-laws, as are thus embodied in the certificate of organization, and thus filed and recorded, is a prohibition of the right to adopt any other by-laws by amendment, or otherwise.

It is well settled that the powers of a corporation, organized under a legislative charter, are only such as the statute confers; and "the enumeration of these powers implies the exclusion of all others." (*Thomas* v. *Rail-*

*road Co.* 101 U. S. 71). The rule of construction applicable to statutory provisions is, "that every power that is not clearly granted, is withheld, and that any ambiguity in the terms of the grants must operate against the corporations and in favor of the public." (*American Loan and Trust Co.* v. *Minnesota and Northwestern Railroad Co.* 157 Ill. 641). If the power claimed is withheld, "it is regarded as a prohibition against the exercise of such a power." (Ibid.) Here, the power to amend is not only not granted, but the right to exercise it is withheld by the requirement, that a copy of the by-laws shall be attached to the original certificate of organization. Corporations can only exercise such powers, as may be conferred by the legislative bodies creating them, either by express terms or by necessary implication. Implied powers are presumed to exist in order to enable such bodies to carry out the express powers granted and to accomplish the purpose of their creation. By an implied power is meant one that is directly and immediately appropriate to the execution of the specific power granted, and not one that has slight or remote relation to it. (*People* v. *Chicago Gas Trust Co.* 130 Ill. 268; *People* v. *Pullman Car Co.* 175 id. 125).

It makes no difference, in the application of the principles above stated to this case, that the original by-laws, as embodied in the certificate of organization, themselves provide that they may be amended, as such provision is embodied in section 1 of article 10 of the by-laws, as set forth in the statement preceding this opinion. "The charter of a corporation is the measure of its powers." (*Thomas* v. *Railroad Co. supra*). There is no difference, in this regard, between a corporation organized under a general law, as was the case with appellee, and one created by a special statute. The same rule of construction applies to both, viz.: that "the powers specifically enumerated, and such other powers as are incidental or necessary to carry those powers into effect, but none others, may be exercised by the corporation." (*People* v. *Pullman Car Co.*

*supra*). If a power or purpose of organization is expressed in the certificate, issued by the Secretary of State, that is not authorized by the act, under which the corporation is formed, such additional power or authority is a nullity.   Where a corporation is formed under the general law, the law itself, and not the declaration of incorporation, or the constitution and by-laws adopted for the corporate government, becomes the charter and enumerates the powers, which are to be exercised. (*Grangers' Life and Health Ins. Co.* v. *Kamper*, 73 Ala. 325). The charter of a corporation, formed under such general law, does not consist of the articles of incorporation alone, but of said articles, taken in connection with the law under which the organization takes place. (*People* v. *Chicago Gas Trust Co. supra*).   As was said by the Supreme Court of the United States in *Oregon Railway Co.* v. *Oregonian Railway Co.* 130 U. S. 1: "The manner, in which these powers shall be exercised, and their subjection to the restraints of the general laws of the State and its general principle of public policy, are not in any sense enlarged by inserting in the charter of association the authority to depart therefrom."

The act of July 1, 1879, does not confer upon corporations, organized thereunder, the power to amend their by-laws, but, for the reasons above stated, expressly excludes the power to make such amendments; and, this being so, the incorporators cannot nullify the statute by embodying in the by-laws themselves the right at some future time to make amendments thereto.   As the act provides the manner, in which the by-laws shall be made and the time at which they shall be adopted, the corporation, organized thereunder, cannot secure to itself the power to adopt by-laws in another manner or at another time by inserting a provision to that effect in its articles of association.   If more be introduced into those articles than the statute authorizes, it is mere surplusage. (*Grangers' Life and Health Ins. Co.* v. *Kamper, supra.*)

In view of what has been said, we are of the opinion that the contract of May 2, 1892, appointing appellant manager of agencies, being a contract made under an amendment to the by-laws which was not authorized by the law under which appellee was organized, is an *ultra vires* contract, that is to say, a contract made under an assumed power, which is beyond and in excess of the charter powers of the corporation.

By the act approved June 19, 1893, and which went into force July 1, 1893, section 3 of the act of July 1, 1879, was amended by providing that "any subsequent amendment or alterations of said by-laws shall be submitted to the Secretary of State, and be approved by the Attorney General, and be recorded in like manner as the original by-laws, before the same shall become operative; and only such by-laws as have been submitted, approved and recorded as herein provided shall be deemed operative." (Sess. Laws of Ill. 1893, p. 84). But this act of 1893 has no application to the contract here under consideration, as that contract expired by its terms on May 1, 1893, and the services thereunder were all performed before May 1, 1893, prior to the time when the amendatory act of 1893 went into force.

But it is claimed by the appellant that, even though the contract in question may be regarded as one which is *ultra vires,* yet a corporation cannot avail itself of the defense of *ultra vires* when the contract has been in good faith performed by the other party, and the corporation has had the full benefit of such performance. In support of this claim various decisions, heretofore rendered by this court, are referred to and relied upon. (*Bradley* v. *Ballard,* 55 Ill. 413; *Darst* v. *Gale,* 83 id. 136; *Benefit Ass.* v. *Blue,* 120 id. 121; *Kadish* v. *Garden City Loan and Building Ass.* 151 id. 531; *McNulta* v. *Corn Belt Bank,* 164 id. 427). A new construction has recently been given to these decisions, which is materially variant from that heretofore put upon them, (*National Home Building Ass.* v. *Bank,* 181 Ill. 35,) but which

must be regarded as the construction now held by this court. (*Best Brewing Co.* v. *Klassen*, 185 Ill. 37). The doctrine, however, that a corporation cannot avail itself of the defense of *ultra vires* when a contract has been in good faith performed by the other party and the corporation has had the full benefit of its performance, was never held to have any application where such contract is immoral or illegal or prohibited by statute or where its enforcement would be against public policy. That this is so may be seen by reference to the authorities last above referred to. (See also 2 Morawetz on Corp. secs. 689-691; 2 Beach on Private Corp. secs. 425, 426; 27 Am. & Eng. Ency. of Law, p. 364; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62). Where such a contract is against public policy, or the policy of the law, the unexecuted portion of it will not be enforced. (*Thomas* v. *Railroad Co. supra; McNulta* v. *Corn Belt Bank, supra*).

Counsel apply the rule contended for to the facts of the present case by claiming that appellant performed services during the year from May 1, 1892, to May 1, 1893, as manager of agencies, for the appellee, and that, although appellee has paid him $3129.00 on account of such services, yet the balance of $1660.00, claimed to be due, should be paid by the appellee whether it had power to make the contract or not, because the appellee, as it is alleged, has received the benefit of such services. We stop not to inquire whether the services were of benefit to appellee or not, but think that the contention of appellant cannot be sustained for the reason that the contract is not only an *ultra vires* contract for the reason above stated but it is a contract prohibited by the statute, and whose enforcement would be against public policy.

Section 5 of the act of July 1, 1879, provides that "the corporate powers shall be exercised by a board of directors: *Provided*, the number of directors shall not be increased or diminished, nor their term of office changed, without the consent of the owners of two-thirds of the

shares of stock. The officers of the company shall consist of a president, vice-president, secretary and treasurer, to be elected at the annual meeting of the board of directors, as may be provided for in the charter and by-laws of the association: *Provided,* that the secretary only shall be entitled to compensation, and in such amount as may be provided for in the charter of such association." (1 Starr & Curt. Ann. Stat.—1st ed.—p. 630). Section 5 thus provides that of the officers of the company the secretary only shall be entitled to compensation, and the compensation of the secretary shall be in such amount as may be provided for in the charter. By the statement that the secretary only shall be entitled to compensation, there is a plain prohibition against the payment of compensation to any of the other officers. The vice-president of the company, by the terms of section 5, was not entitled to compensation. Such offices, as are here mentioned, are usually filled by the chief promoters of the corporation, and their interest in the stock, or other incidental advantage is supposed to be the motive for executing the duties of their office without compensation. (*Kilpatrick* v. *Penrose,* 49 Pa. St. 121).

In the case at bar, the appellant was not only one of the original directors elected at the first meeting of the stockholders, but he was shortly thereafter elected vice-president of the company. As vice-president, he was entitled to no compensation by the express terms of the statute. Notwithstanding the prohibition thus contained in the statute, he himself, while acting as director, and while holding the office of vice-president, offered an amendment to the by-laws, authorizing the board of directors to appoint a manager, who should appoint all the agents of the society with compensation to be paid out of the expense fund. As such manager, he was to control and manage the agency system of the society. A few days after the amendment to the by-laws proposed by the appellant was adopted, he was appointed manager

of agencies in pursuance of the terms of the amendment proposed by himself at the salary and for the compensation named in the contract. As a member of the board of directors he voted for his own appointment, and also voted for the approval of a contract made with himself. He was one of the five directors of the society, and his term of office and compensation, as manager of agencies, were to be fixed by a written contract made by the board of directors, and such compensation was to be paid out of the expense fund, as shown by the terms of the amendment in question, being section 6 of article 3. As a member of the board of directors, therefore, appellant made a contract with himself and voted to approve the contract with himself. He thus effected indirectly what the statute expressly prohibits. Although he was entitled to no compensation as vice-president, he succeeded in obtaining compensation by creating a new office and voting for his own appointment to it. It is against public policy to tolerate such conduct on the part of the officers of a corporation; and the rule, that the defense of *ultra vires* can not be set up because of benefits received by the corporation, has no application here for the reason—if there were no other reason—that the contract made by the plaintiff in error was prohibited by statute.

It is well settled that the directors of a corporation, who control its finances and property, are not entitled to compensation for the performance of their duties, unless such salary is fixed by the by-laws or by a resolution of the board before the services are performed. It must appear that a by-law or resolution has been adopted, authorizing and fixing the allowance, before the services are rendered. (*Gridley* v. *Lafayette, Bloomington and Mississippi Railway Co.* 71 Ill. 200; *Ellis* v. *Ward*, 137 id. 509). Here, the by-law was passed, providing for the appointment of a manager of agencies, before the services of appellant, as such manager, were rendered; but, as has already been stated, the by-law was invalid as being

*ultra vires* and beyond the power of the corporation to pass it. The rule, that before compensation can be received for the usual services of a corporate officer, such compensation must be allowed by a by-law, passed before the performance of the services, refers to and contemplates a legal by-law, or a by-law having such force of law as to authorize action under it. Here, there was no such by-law before the performance of these services.

It is said, however, by the appellant that a director may deal fairly with a solvent corporation in which he is a director; and that, when a corporate officer performs services outside of his duties as such officer, he may recover compensation for said services. The claim here is, that the services rendered by the appellant were outside of the usual duties of a vice-president or director of the company. The third and fourth amended pleas aver, that the duties of the appellant as vice-president and director are the same as the duties and services provided for in the contract. The demurrers to these pleas admit the truth of this allegation. Nor can it be said, that the pleas are bad as answering only a part of the declaration. The pleas do not say, that a part of the services rendered in the contract were a part of appellant's duties as an officer of the corporation, but they say that the services required by the contract were a part of appellant's duties as an officer. The fourth amended plea says that he had a duty to perform in relation to the loan fund, as well as the expense fund, but his duties, considered as a whole, included such duties as he was to perform under the contract. Appellant was a director of the company, and section 4 of article 1 of the by-laws provides that the directors shall cause the expense fund to be used in the vigorous and competent prosecution and extension of the business of the association, so far as practicable. The amendment embodied in section 6 of article 3 required the performance by the board of directors of the same duty specified in section 4 of article 1. Counsel for ap-

pellant say in their brief: "And the by-laws made it the duty of the directors to use the expense fund in extending the business of the corporation." The use of the expense fund was a duty of the board of directors, and, therefore, one of the duties which appellant was bound to perform without compensation. The amendment, embodied in section 6 of article 3 in connection with the contract of May 2, 1892, virtually provided for paying compensation to appellant for performing the same duties in the use of the expense fund, which he was under obligations to perform without compensation. Section 5 of the act of July 1, 1879, was amended in 1897 by providing that "unless the compensation of the secretary and treasurer shall be provided for in the by-laws, the directors shall annually fix and determine the same." (Hurd's Stat. of 1897, p. 430). This amendment, however, was passed long after the present contract had expired.

We concur in the following views expressed by the Appellate Court in their decision of this case: "If Fritze collects the judgment rendered below, he will have received for his year's services (not including any traveling expenses) $4789.06. If the board of directors can do this for the vice-president, they can establish another office for the president and still another for the treasurer and pay each a fat salary. If the directors possess the power to thus evade the law at all, they will necessarily be tempted to evade it for the benefit of each other. The tendency will be to make the favors mutual. We think it self-evident that such a course will quickly absorb the contributions of the shareholders, and will ruin any building and loan association. We are of opinion that the contract made with Fritze was contrary to the spirit and purpose of the act, and not within the powers granted or implied to the association, and that it is contrary to public policy and good morals to permit the unexecuted part to be enforced. * * * Appellee argues that the book accounts of appellant which he put in evidence made a

case for him under the common counts, regardless of the contract. We do not concur in this position. The ledger account in evidence showed all appellee's credits thereon were for salary and commissions. * * * Appellee could not and did not submit his case upon the books alone, but put the contract in evidence. The contract was a necessary part of his case. (*Walker* v. *Brown,* 28 Ill. 378). In our judgment that contract was illegal and void. Complete execution of such a contract upon one side does not give a right of action under the common counts. (*American Strawboard Co.* v. *Peoria Strawboard Co.* 65 Ill. App. 502). * * * When the contract in this case was offered in evidence, appellant objected that it was without authority of law and void. The objection was overruled, and appellant excepted. * * * We hold the court should not have admitted the contract, and that appellee could not recover without it; that the court should not have found for appellee, and should not have rendered judgment for appellee. * * * Our judgment is not based upon a determination of the facts different from the finding of the circuit court, but upon our legal conclusion that the contract was void."

In addition to the error of the trial court in admitting the contract as stated by the Appellate Court, the trial court erred in refusing to hold as law the first and second propositions of law submitted to and refused by it, which said last named propositions are fully set forth in the statement preceding this opinion.

In the light of the views herein expressed, we are of the opinion that the judgment of the circuit court was erroneous, and that the judgment of the Appellate Court reversing the judgment of the circuit court without remanding the cause, is correct.

Accordingly, the judgment of the Appellate Court is affirmed.                                    *Judgment affirmed.*