Garlick v. Mutual Loan & Building Ass'n.

## Louis D. Garlick, et al., v. Mutual Loan & Building Association of Joliet.

### Gen. No. 4,337.

1. HOMESTEAD LOAN ASSOCIATION—*how far, exempt from operation of usury laws.* It was not the purpose of the legislature to exempt such associations from the operation of usury laws, generally, upon any and all contracts howsoever made, but the exemption is restricted to interest, premium, fines, and interest on such premiums as shall accrue "according to the provisions" of the act.

2. HOMESTEAD LOAN ASSOCIATION—*what essential to validate by-law of.* Where the charter prescribes the mode in which by-laws are to be passed or specifies preliminaries to be observed, in order that the same be valid and binding, all regulations upon the subject must be strictly followed.

3. HOMESTEAD LOAN ASSOCIATION—*by whom by-laws of, should be adopted.* By-laws of a homestead loan association organized under the laws of this state should be adopted by the stockholders and not by the directors, and amendments thereof made subsequent to the act permitting amendments should, likewise, be adopted by the stockholders.

4. USURY—*when defense of, may be interposed.* So long as any portion of the debt, which is the subject of controversy, remains due, the defense of usury is available.

5. USURY—*how defense of, pleaded.* It is not essential that the defense of usury be so pleaded as to set up specifically each and all of the items alleged to have been usurious.

6. ESTOPPEL—*when, does not preclude defense of usury.* Held in this case that the principle of estoppel did not apply to preclude the defense of usury by a borrowing member of a homestead loan association. (Collins v. Cobe, 202 Ill. 469, distinguished.)

Foreclosure proceeding. Error to the Circuit Court of Will County; the Hon. ROBERT W. HILSCHER, Judge, presiding. Heard in this court at the April term, 1904. Reversed and remanded. Opinion modified and refiled and rehearing denied October 7, 1904.

CARROLL BROS. and GEORGE J. ARBEITER, for plaintiffs in error.

J. W. DOWNEY, for defendant in error.

MR. JUSTICE VICKERS delivered the opinion of the court.

This writ of error is sued out to reverse a decree of the Circuit Court of Will county, entered on the cross-bill of defendant in error, praying for a foreclosure of a quit-claim deed, alleged to be a mortgage. Plaintiffs in error filed their bill for an accounting and to restrain defendant in error from interfering with the possession and enjoyment of certain real estate therein described, and praying for the cancellation of a certain quit-claim deed on the ground that the same had been procured by fraud and mis-representation. By an amendment to the bill plaintiff in error set up usury in certain loans therein referred to, made by defendant in error to plaintiffs in error. Defendant in error filed its answer to the original bill, denying all the material charges therein, and then filed its cross-bill alleging a default in the payment of interest and dues, insolvency of plaintiffs in error and praying for an accounting, the appointment of a receiver and a strict foreclosure of the quit-claim deed. Upon a hearing in open court a decree was entered finding that plaintiffs in error were indebted to defendant in error in the sum of $11,020.50, finding that the quit-claim deed was a mortgage to secure this amount and granting a foreclosure with the right to redeem in plaintiff in error.

Defendant in error is a building and loan association, organized under the laws of Illinois providing for the organization of such corporations. Plaintiff in error, Louis D. Garlick, was a stockholder in the association, and procured a number of loans on the property described in the bills in this case, at different times. The relation of the

parties commenced on November 28, 1885, when plaintiff in error borrowed $700 of defendant in error, and pledged seven shares of stock and gave a mortgage on the real estate in question to secure the same.

On the 7th of August, 1889, plaintiff in error borrowed $5,000 more on fifty shares of stock and executed a mortgage on the same premises to secure it. At the time this loan was made plaintiff in error received in cash $4,000, but executed a note for $5,000 drawing eight per cent interest, the $1,000 being deducted for premium on the loan. Plaintiff in error made monthly payments of $58.34 on this loan until May 11, 1893, when he procured another loan of $10,000, receiving $8,000 and giving his note for $10,000, drawing eight per cent interest. The premium on this loan was $2,000. The unpaid balance on the $5,000 loan was included in the $10,000 loan. On this third loan plaintiff in error paid $175 per month. On September 15, 1896, another loan for $11,600 was made, and all prior indebtedness was merged in this mortgage. Plaintiff in error denies the execution of this mortgage and claims he received no money whatever at the time this note and mortgage were dated; he, however, paid on this loan at the rate of $75 per month, and on August 31, 1899, he and his wife executed a quit-claim deed to defendant in error to the premises, taking a contract for the reconveyance to him upon the payment of the $10,000 in installments of $500 on the first of March and September of each year until paid; and $50 per month interest or $8,000 in one payment within one year from date. The purpose of executing the quit-claim deed was to save the expense of a foreclosure and to satisfy the Auditor of Public Accounts, who was complaining about this loan; but it was manifestly the intention of both parties that the loan should continue, and that the quit-claim deed was merely a change in the form of the security without any substantial change in the relation.

In the original bill as amended, plaintiff in error charges usury in all these loans, and asks that the amount of money actually received by him together with legal interest

thereon be charged to him and that he be credited with all cash payments made, and upon the payment of the balance found to be due, if any, that the quit-claim deed and all the mortgages be decreed satisfied.

The Circuit Court held against the plaintiff in error on the charge of usury, and this ruling is assigned as error. The act of the legislature under which defendant in error was organized, was passed in 1879. Section 8 of said act provides the manner in which the money of the association shall be loaned to its members, and reads as follows:

" The Board of Directors shall hold such stated meetings, not less frequently than once each month, as may be provided by the by-laws, at which the money in the treasury, if one hundred dollars or more, shall be offered for loan in open meeting; and the stockholders who shall bid the highest premium for the preference or priority of loan, shall be entitled to receive a loan of one hundred dollars, less the premium bid, for each share of stock held by the stockholder; provided, that no loan shall be made by said corporation except to its own members, nor in any sum in excess of the amount of stock held by such member borrowing; and provided, that such stockholder may borrow such fractional part of one hundred dollars as the by-laws may provide. Good and ample real estate security, unincumbered except by prior loans of such association, shall be given by the borrower to secure the repayment of the loan; provided, however, the stock of such association may be received as security, to the amount of the withdrawal value of such stock." Laws of 1879, p. 86.

Section II of said act as amended exempts contracts of such associations from the usury law when made in accordance with such act. Section II reads as follows: " Corporations organized under this act being of the nature of co-operative associations, therefore no premiums, fines nor interest on such premiums that may accrue to the said corporation according to the provisions of this act, shall be deemed usurious, and the same may be collected as other debts of like amount may be collected by law in this state."

It was not the purpose of the legislature to exempt such associations from the operation of our usury laws generally upon any and all contracts howsoever made, but the exemp-

tion is restricted to interest, premium, fines, and interest on such premiums as shall accrue " according to the provisions of this act." Borrower's Building Association v. Eklund, 190 Ill. 257; Jamieson v. Jurgens, 195 id. 86.

Prior to the amendatory act of 1891, there was only one method provided by law by which these associations could loan their funds at a greater rate of interest than that provided by law, and be exempt from the forfeitures imposed by our usury laws, and that was by a competitive bidding at a meeting of the board of directors. By this amendment section 8 was so changed as to permit an association, by by-law, to dispense with the offering of its money to the highest bidder in open meeting, and in lieu thereof to loan its money at a uniform rate of interest and premium fixed by the by-laws, either with or without a premium, deciding the preference by the order in which applications are received. Under section 8 as amended in 1891, it is assumed that the power is conferred on building associations to enact a by-law establishing a level premium, and in pursuance of the above amendment the defendant in error claims to have ordained a by-law authorizing it to charge a level premium. In regard to the loans of $700 and $5,000, both of which were made when it is not pretended there was any authority of law to loan otherwise than in accordance with the law of 1879, we do not desire to express any opinion. Since this case must be reversed and remanded for the errors hereinafter pointed out, and upon a retrial of the case it will be necessary for the court to determine whether the proofs show that these two loans were made in accordance with the requirements of the law of 1879, we will leave that question open to be determined upon the proofs to be submitted.

With respect to the loan of $10,000 made on May 11, 1893, there is no pretense that this was made in accordance with the law prior to the amendment of 1891, but defendant in error contends it had adopted a level premium of twenty per cent, and eight per cent as the uniform rate of interest. To sustain this contention a record of a joint meeting of a committee, composed of three officers of de-

fendant in error and five officers representing the People's Loan & Homestead Ass'n is offered in evidence. The minutes of this joint meeting show that the meeting was held at the court house in Joliet on July 15, 1891; that there were present, representing defendant in error, J. P. King, pres., John Wood, vice-pres., and C. H. Conkling, sec'y; that representing the People's Loan & Homestead Ass'n, F. W. Plant, pres., I. C. Norton, vice-pres., directors, H. R. Pohl and William Erb, Horace Weeks, sec'y, and Judge G. D. A. Parks, attorney, were present. The minutes show that the meeting organized by the election of J. P. King, pres., and F. W. Plant, sec'y. Then follows the record of the business transacted in the following words: "On motion of director Wood, seconded by director Pohl, it was moved that the rate of interest collected by said associations on loans remain at eight per cent; carried. On motion of director Pohl, seconded by director Erb, it was moved that the associations hereafter adopt a level premium of twenty per cent; carried." One other irrelevant motion was made by Erb and seconded by Wood, and whether carried or lost the record does not show; then follows the motion to adjourn.

In addition to the foregoing record, the following paper was offered in evidence and received by the court subject to objection:

"To the Board of Directors of the Mutual Loan and Building Association, Joliet: Take notice that at the next regular meeting of this association, I will present the following amendment to the by-laws of the association: The rate of interest on all loans hereafter shall be eight per cent per annum, and the premium on all loans shall be twenty per cent to all borrowers. The rate of interest on advance dues shall be five per cent per annum, payable semi-annually.

July 28th, 1891.           J. L. O'DONNELL, Atty."

In connection with the above notice, a copy of the minutes of the board of directors of a meeting held December 22, 1891, was offered in evidence. That portion of the minutes which is supposed to have a bearing here is as follows: "Attorney O'Donnell moved that the by-laws be

amended according to amendments submitted, and in accordance therewith. Carried." Charles H. Conkling, secretary of defendant in error, testified that the " notice " above was adopted as a by-law by the board of directors at the meeting on December 22, 1891.

These are the records relied on by defendant in error as a by-law permitting it to charge a level premium of twenty per cent on these loans, and eight per cent interest thereon. Under the law governing building and loan associations as originally passed in 1879, it was required that when 100 or more shares of stock were subscribed, a meeting of the subscribers should be called by the commissioners to elect directors, adopt a charter and by-laws; a copy of these proceedings, together with a copy of the by-laws, were to be transmitted to the Secretary of State, who was required to make a certificate of incorporation attaching copies of all the papers; all of which were required to be recorded with the recorder of the proper county, before the association was duly organized for the transaction of business.

Under this law it was held by the Supreme Court in Fritze v. Equitable Building and Loan Society, 186 Ill. 183, that no power existed in the association to change or amend its by-laws after they had been adopted by the subscribers' meeting and recorded by the recorder. It is said by the Supreme Court in this case : " It is well settled that the powers of a corporation organized under a legislative charter are only such as the statute confers; and the enumeration of these powers implies the exclusion of all others; " citing Thomas v. R. R. Co., 101 U. S. 71.

It is to be noted in this connection that the power to pass by-laws under the original act of 1879 was granted to the meeting of the subscribers, and not to the board of directors. The legislature passed another amendatory act, which went into effect July 1, 1893, by which the power to amend the by-laws was conferred on building and loan associations, but requiring that such amendment should be certified to the Secretary of State, passed on and approved by the Attorney General, and filed and recorded in the same manner as the original by-laws. The power to make

by-laws is joined in the same sentence with the power to elect directors and adopt a charter in the law of 1879, and the power is expressly granted to the stock subscribers, and is to be exercised at the preliminary meeting at which the organization is formed, and, as was held in Fritze's case above cited, when once the power has been exercised by the subscribers it is exhausted, and no changes could thereafter be made without further legislation.

In Endlich on Building Associations, sec. 271, speaking of the power to make by-laws, the author says: " Ordinarily this power resides in the corporate meeting of the stockholders, to be exercised by them in the same manner in which the charter directs them to exercise other powers, or to transact other business. It is only by express charter provision that this power can be delegated to particular officers or bodies of members, e. g., the board of directors."

Where the charter prescribes the mode in which by-laws are to be passed or the preliminaries to be observed, in order to make them valid and binding, all regulations upon the subject must be strictly observed. Endlich on Building Associations, sec. 271.

There is nothing in the amendatory act of 1893, relating to the amendment of by-laws, that suggests any change respecting the agency through which this power was to be exercised. In so far as the powers and duties of the board of directors are defined by the statute, they are contained in section 5 of the law of 1879. (Laws of 1879, page 84.) The amendments of 1893 only purport to amend sections 3, 15, 16, and 17, leaving section 5 as it stood in the original act; so that if under the original act the board of directors had no power to make or amend by-laws, it is clear the power was not conferred on the board of directors by the amendatory act in question.

The action of the board of directors which it is contended amounted to making a by-law occurred after the amend. ment of July 1, 1891, but before the amendment of 1893 took effect. If the doctrine of the Fritze case is to govern, then the amendatory act of 1891 must be held to apply only to associations organized after the act took effect, or

that the power to amend by-laws is implied from the powers granted. If the former be the proper construction, the defendant in error, being in existence prior to July 1, 1891, cannot avail itself of the change provided for by the amendment. If it be said the power to amend its by-laws is implied from the powers granted by the amendatory act, then we ask, by whom is this implied power to be exercised? We have already seen that the power to adopt by-laws in the first instance is conferred on the stockholders, and not on the board of directors, hence any enlargement of this power by the legislature, where no express provision is made to the contrary, must be exercised through the same agency that originally exercised the power.

The decision of the Supreme Court in the Fritze case was rendered after the act of 1891 above referred to went into effect and related to a by-law adopted in 1892, and it is there expressly ruled that no implied power to amend or change the by-laws existed, so whatever may be thought of the sufficiency of the so-called by-law as to its form and substance and the manner of its adoption, under the holding in the Fritze case no power existed even in the body of stockholders acting for the corporation to pass such a by-law. This seems to have been the view prevailing with the legislature, for at its next session it passed the act heretofore referred to, granting the power to amend by-laws, thereby remedying the omission in the law of 1891.

The three loans were made before the law authorizing associations to amend their by-laws went in force. There was therefore no authority in the defendant in error arbitrarily to deduct twenty per cent premium from the face of these loans and then charge eight per cent interest on their face thereafter, and to do so was in palpable violation of the usury laws of the state.

The evidence shows that the note and mortgage made for $11,600 in September, 1896, and also the quit-claim deed of August 31, 1899, were mainly, if not entirely, based on the balance claimed to be due on these previous loans and are subject to the defense of usury notwithstanding this change in the form of the debt.

So long as any portion of the debt remains due the defense. of usury is available.    Hadden v. Innes, 24 Ill. 382; Farwell v. Meyer, 35 id. 42; Saylor v. Daniels, 37 id. 332; Mitchell v. Lyman, 77 id. 525; Peddicord v. Connard, 85 id. 102; Jenkins v. Greenbaum, 95 id. 11; Payne v. Newcomb, 100 id. 611; Jenkins v. International Bank, 97 id. 568.

It is insisted that plaintiff in error is estopped from raising the question of usury or that the by-laws of the association did not authorize the loan at a level premium, and the case of Collins v. Cobe, 202 Ill. 469, is cited and relied on to support the contention.

This position cannot be sustained, and the case cited does not support it.    In the Cobe case the borrower had expressly recognized the by-law in his written application for the loan, and it is held that he is estopped from disputing the by-law, after recognizing it and obtaining a loan according to its provisions.    In the case at bar there was not only no recognition of a by-law, but none to recognize; therefore the doctrine of estoppel has no application here. Here there is nothing that even purports to be a by-law passed by the proper authority, while in the Cobe case it appears that the only defect insisted on was the omission of the association to readopt a by-law after the act of 1891 went into effect, but the association continued to act under a by-law previously adopted.    While it seems to be implied from what is said in the Cobe case that the association might have adopted a by-law by virtue of the power conferred by the law of 1891, the question is not raised or passed on in that case, and hence it is not an authority sustaining the power to pass such a by-law prior to the amendment of 1893.    Any other construction of the Cobe case would be to put it in conflict with the Fritze case.

It is said the defense of usury was not sufficiently pleaded.

We think the averments were sufficiently definite and certain to advise the court and parties what the contention of the plaintiff in error was.    In Maher v. Lanfrom, et al., 86 Ill. 513, it is said:    "The answer may not be sufficiently specific as to each and all the items of usury set up and

relied on. But the charge that $1,000 was retained out of the loan, and only $9,000 actually received by Maher when he gave the note for $10,000, is specific, and clearly made. This is a specific charge that this sum was reserved as usury." In view of the charge in the bill that plaintiff in error had often requested a statement of his account, which had been refused by defendant in error, and the Circuit Court properly finding this allegation true, it falls harshly on the ear of a court of chancery to hear defendant in error complaining that plaintiff in error had not set out specifically all the various payments of these usurious transactions, when the record of them is in the possession of defendant in error, and it has persistently refused to furnish a statement of the account to plaintiff in error. Plaintiff in error would be entitled to charge usury in much more general terms than he does, and upon a prayer for a discovery properly framed, require defendant in error to bring forward its detailed book accounts. The practice has always prevailed in chancery to allow the complainant to have a discovery of the particulars of usurious transactions on the condition that he submits to pay the debt with legal interest. Jenkins v. Greenbaum, 95 Ill. 11.

We do not regard the charge that the quit-claim deed was obtained by fraud as proven, but in the view we take of the case, it is not a matter of controlling importance so far as the adjustment of the equities of the parties is concerned. Assuming the deed was fairly and honestly obtained, it is, after all, nothing more than a mortgage to secure an antecedent debt, and if obtained through fraud, the debt it is intended to secure still exists, and the defendant in error could fall back on its prior mortgage which is still unsatisfied of record, and disregarding the deed, have a foreclosure of the mortgage for the amount of the debt.

In accordance with the conclusions herein expressed the decree of the Circuit Court of Will county is reversed and the cause is remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*