## JACOB ROSENCRANS
### v.
## FREDERICK SCHNACKE ET AL.

1. EVIDENCE AS TO PAYMENTS.—The court is of opinion that the claim of appellee' that he paid the disputed item of $1,500 on June 5, 1874, the $700 item on Oct. 1, 1873, and the $400 item in October, 1875, is not sustained by the evidence; that appellant did not assume to pay the balance of the Emslie mortgage, and the $830 was properly chargeable to appellee, Schnacke.

2. USURY.—Where appellant assigned for error that the court be'ow did not sustain his exceptions to the report of the special master, in which he claimed that the master should have subrogated his entire mortgage or claim to the original rights of Emslie under his mortgage and allowed him ten per cent. interest, the rate the debt in that mortgage was drawing, and the basis of such claim was that the money which the mortgage in suit was given to secure was paid on a contract between appellant and appellee that the Emslie mortgage was to be paid by appellee with the money borrowed for that purpose, and that as the statute of usury had been plea'led to the contract under his own mortgage, he had a right to resort to the Emslie mortgage to save himself from the consequences of such plea being sustained. *Held*, that the maxim of the law that he who seeks equity must do equity when applied to usurious contracts, is fully satisfied by compelling the party agreeing to usurious interest, and seeking equity, to pay the principal and six per cent. interest. The report of the special master is therefore correct and just, and the court erred in sustaining the exceptions to it, and decided correctly in overruling the exceptions complained of by appellant.

APPEAL from the Circuit Court of La Salle county; the Hon. GEORGE W. STIPP, Judge, presiding. Opinion filed July 27, 1883.

Mr. G. S. ELDREDGE and Mr. LORENZO LELAND, for appellant; as to the right of subrogation of a junior mortgagee, cited Pardee v. Van Anken, 3 Barb. S. C. R. 537; 2 Story's Equity, § 1023; Jones on Mortgages, § 926; Hughes v. Wheeler, 8 Cowen, 77; Conwell v. McGowan, 81 Ill. 285; Richardson v. Hockenhall, 85 Ill. 124; Shinn v. Shinn, 91 Ill. 477; Worcester Nat. Bank v. Cheeney, 87 Ill. 602; Edgarton v. Young, 43 Ill. 464; Flower v. Elwood, 66 Ill. 438; Young v. Morgan, 89 Ill. 199; Beaver v. Slanker, 94 Ill. 175.

A valid, subsisting obligation is not destroyed because included in a security or made the subject of a contract void for usury, although the valid obligation is formally satisfied and discharged. It may be enforced in case the new security or contract is invalidated: Patterson v. Birdsall, 64 N. Y. 294; Cook v. Barnes, 36 N. Y. 520; Winsted Bank v. Webb, 39 N. Y. 325; Gerwig v. Sitterly, 56 N. Y. 214.

Messrs. LELAND & GILBERT, for appellees; that the court below could properly restate the account, cited Davis v. Roberts, 1 S. & M. Miss. Ch. 543; Huston v. Cassidy, 14 N. J. Eq. 320; McHenry v. Moore, 5 Cal. 40.

LACEY, P. J.    This was a suit brought in equity by appellees against appellant seeking to redeem certain lands from a certain mortgage given by appellee, Frederick Schnacke and wife, to the appellant to secure notes to the amount of $3,795.36. The notes and mortgage bear date Nov. 8, 1871. The notes drew ten per cent. interest on their face but usury was taken and reserved in the transaction by the execution of certain side notes. Usury was alleged in the bill and also certain payments were claimed as having been made by appellee Schnacke, which were not credited on the notes. The charge of usury was allowed on a hearing before the master, and the main question is in regard to several alleged payments not credited on the notes or admitted. The dispute in the main was as to whether the appellee, Fred Schnacke, should be allowed the following credits, to wit: October, 1873, $700, October, 1875, $400, and as to whether a payment of $1,500 was made August 23, 1873, or June 6, 1874, and as to whether the sum of $830 should be applied in payment of balance on a certain mortgage given by appellee to one Emslie on the same land, and whether a payment in 1872 was $1,100 or $1,200, and whether six per cent. interest or ten per cent. should be allowed as interest on the amount of the mortgage by reason of the subrogation of the appellant to the rights of Emslie in that mortgage, which was in part paid with the money for which the notes and mortgage in question

were given. The cause was referred to John H. Wilder, as special master, to take proofs and ascertain the amount due from the appellee, Fred Schnacke, or either of the appellees, to appellant, and further to ascertain the amount due on the mortgage debt and report the same and all testimony taken, and his conclusions of law thereon. As to the disputed items the master found that September 6, 1872, Fred Schnacke, the appellee, paid to appellant $1,100, to be paid by him to Bullen (who represented the Emslie mortgage) for Schnacke, but afterward by agreement between Schnacke and Rosencrans, it was applied in payment of a $977 note and mortgage and an old $35 note, which settlement the special master does not disturb. That Frederick Schnacke, one of the appellees, paid $1,500 August 23, 1873, and that at the settlement had November 8, 1873, $670 of that sum was applied in payment of usurious interest on the loan of the $3,795.36, and the remainder of the $1,500 was applied in payment of the balance due on the note from Schnacke to Peter Emslie and by him assigned to the appellant, and the usurious interests not being allowed against appellee, the $670 was applied as payment on the notes in question. The master did not allow a payment of $1,200 in fall of 1872, nor a payment of $1,500 in June, 1871, but allowed it as of August, 1873. He did not allow $400 as of the fall of 1875 and did not allow a payment as of October, 1873, of $700 and he allowed the sum of $830 to be taken out of the payment of $1,500 August 23, 1873, to be offset against the balance of the Emslie note taken up and purchased by appellant and settled between appellant and Fred Schnacke.

Upon exceptions as to those items being taken before the master they were overruled by him, and upon their renewal in the circuit court they were partly sustained, and the court restated the account as follows:

It allowed Schnacke credit of $700 October 1, 1873, $1,500 June 5, 1874, $400 October 1, 1875, and refused to allow appellant the $830 payment on Emslie mortgage. These are the main disputed items. Both appellant and appellee agree that there was one and but one $1,500 payment, but the date

is disputed.   The date of this payment appears to be one of
the pivotal points in the case on account of its bearing on the
question of the other payments and other disputed facts.   If
this payment was August 23, 1873, then there was no $700
payment October 1, 1873, as claimed, for that would make
more money paid in one year than appellee, Schnacke, claims
he paid; and if Schnacke was mistaken on this point he was
more than likely mistaken on all the other disputed-points.
It would render all his claims, where disputed, of the most
doubtful character.   We shall not undertake to make a de-
tailed statement of the evidence bearing on this or the other
questions but content ourselves with giving generally our
conclusions.   We have examined all the evidence and care-
fully considered the arguments of counsel and are fully satis-
fied of the unreliableness of the appellees' evidence and its in-
sufficiency to establish this payment as of the date of June 6,
1874.   The appellant having the notes bearing no credits of
the character in question, the burden of proof is upon appel-
lee to establish this and all other disputed payments.

The evidence relied on by the appellee to sustain such pay-
ment was his own, twice amended; his daughter's, Carrie
Schnacke, who testified to some conversations that she claims
to have heard between her father and appellant; Henry
Schnacke, his son, who testifies to seeing a receipt when a boy
about fourteen years old, among his father's papers, signed by
appellant, for $1,500, and that it was dated in 1874; John D.
Vette who testified that at some time after a certain wagon
had been purchased by Schnacke, and his note being given
for it on the day of the purchase, the latter some time after-
ward on making a payment of $50 on the note had a roll of
money which he said he was going to pay to appellant, and
the witness afterward saw appellant and spoke to him about
it but the latter made no reply.   The purchase of the wagon
as shown by Vette's books was June 19, 1872, but was sup-
posed at first by Vette to have been made in 1873.   Vette
could not state whether the $50 was paid him in 1873 or 1874;
Mary Crandall, another witness, who supposed she was at ap-
pellant's house in the spring of 1874, her presence at the time

the money was claimed to have been paid being testified to by appellee; George Pope, who testified to going in company with appellee to Ottawa on June 5, 1874, on the day Forepaugh's show was there, and of appellee claiming to have a large amount of money and that he was going to pay it to appellant and Mary Schnacke, his wife.

It appears to us that the testimony of Carrie and Henry Schnacke is entitled to but little, if any, weight. The relationship they bear to appellee, their age at the time of the occurrence which they relate, and the time elapsing since, and the air of improbability about the whole story considered, we feel constrained to regard their testimony in relation to the matters which they claim to remember as being more the outgrowth of imagination than memory.

The testimony of Vette is of no force to show payment in 1874, because he can not remember when he saw the roll of money; besides if the date on which he received the payment on the note given for the wagon and when he saw the roll of money in appellee's hands was the date of payment of the $1,500 to appellant as appellee claims, it would be more likely to have been in 1873 than in 1874, for the reason that it is shown by Vette's books that the wagon was purchased in 1872, while both Vette and appellant supposed it was purchased in 1873, and the appellee claims in his testimony it was the next year after the wagon was purchased that he paid the money to Vette and on the same day the $1,500 to appellant. The two circumstances, payment to Vette and to appellant appear to be associated together in appellee's mind, and if the two payments were coincident, and it was one year after the wagon was purchased, then the disputed payment was made to appellant in 1873 and not in 1874. The evidence in this light is rather against appellee than for him. Pope's testimony was incompetent as was also that of appellee's wife. It is shown that Mrs. Crandall was ninety years of age and her memory bad, and by other testimony it appears beyond a doubt that she was not at appellant's house in 1874, which clearly shows a mistake on the part of appellee in that particular as well as in regard to the date of

Rosencrans v. Schnacke.

the purchase of the wagon from Vette.  This is about all the corroborating testimony of appellee to show that he paid this money in 1874, which, taken together, in our judgment, has no force to corroborate but taken as a whole rather weakens appellee's side of the issue.  We do not regard the supposed book of accounts of appellee showing payments as of any weight as evidence.  It shows on its face that there are no dates opposite the several items except the year.  Considering all the circumstances we are compelled to disregard it.  Opposed to this proof is the unconditional denial by appellant in his testimony that any such payment was made, but that the payment was made in 1873.  In corroboration of the appellant was the fact of their several settlements and the giving notes for interest on the mortgage notes in accordance with the terms of the notes of date of Nov. 8, 1873, Nov. 8, 1874, Nov. 8. 1875, and Nov. 8, 1876, in which settlements an account of payments was taken and in none of which were any of the disputed items spoken of or claimed by appellee.  We must therefore regard the claim of appellee that he paid the disputed item of $1,500 on June 5, 1874, as not sustained, and with this failure also the $700 item as of Oct. 1, 1873, and also the $400 of October, 1875; the proof of this last payment rests solely on the testimony of appellee.  Then comes the claim of the $830 said by appellant to have been allowed on the Emslie note which had come into appellant's hands.  At the time when the mortgage for $3,795.36 was given by appellee to appellant, the money loaned to appellee was to so to pay off the Emslie notes and mortgage on the same land.

Appellant testifies that he paid all the money in cash to appellee and his agent and laid the money right down on the table before appellee's face and that appellee assumed to pay off the Emslie mortgage in full, but that afterward there came up a portion to be paid and that he had to take it up to secure his own mortgage lien.  Appellee's counsel agreed that appellant did not pay over all the money but assumed to pay off the Emslie note himself, and that when appellant took up the balance of the Emslie mortgage that he was only doing what he ought to have done, and that he should not be com-

pelled to pay appellant for it, and appellee in his testimony gives a sort of color to this claim. In order to sustain this theory it is claimed that the $1,100 for which Rosencrans gave his receipt bearing date Sept. 6, 1872, and which had been in appellee's possession ever since it was given, was really past date one year, and that the money was really paid Sept. 6, 1871; that it was paid in view of the fact that appellant was to pay off the Emslie mortgage, and that on Nov. 8, 1871, when the mortgage in suit was given, this payment of $1,100 was deducted from the amount due on the Emslie notes after deducting previous payments, and that reduced the amount of those notes to the sum of $3,810.21, only $14.85 more than the amount of the mortgage, and that appellant then paid only the two first Emslie notes falling due, which was $3,091.66, leaving $703.75 unpaid; and as the amount of the mortgage covered the whole amount, as a matter of course, appellant assumed to pay such balance, and that it was that balance which he had paid and unjustly charged to appellee, amounting, as charged, to $830.

But we think it would be unsafe to rely on speculations of this kind to overturn what we deem the decided weight of the evidence in favor of the existence of certain facts entirely incompatible with such theories. It would be just as plausible to suppose that Schnacke, and Silver, who was present representing the holder of the notes, did not represent to the appellant the actual amount due on the Emslie notes by the sum of $700 or $800 and that the $3,795.36 really lacked that amount of paying them off, or that the sum represented by the mortgage was the true amount due, and that appellee or Silver or both, failed to apply all the money in payment, leaving this balance on the Emslie notes unsatisfied. It is safer to conform theories to facts than facts to theories. It would be exceedingly improbable that there would be a mistake in past dating the note (an uncommon mistake to make), and it would be alike unreasonable to suppose that appellant at the very commencement of his dealings with appellee could foresee facts as they have since transpired and have formed the design so far in advance to wrong the appellee. The appellant testifies

that the receipt was dated correctly as of the day on which the money was paid.   That the money was paid on the 6th day of September, A. D. 1872.   The receipt bears date on its face of Sept. 6, 1872, and contains internal evidence that the money was to be paid on the Emslie or Bullen note, and that the claim was then in the City National Bank where appellant swears the unpaid note remained till it was sent back to Chicago.   The appellee, however, denies that the receipt was correctly dated.   There being a conflict in the evidence of oath against oath as between the parties interested the receipt ought to settle the matter even without considering appellant's other corroborating evidence.   We therefore conclude that the appellant did not assume to pay the balance of the Emslie mortgage, and that the $330 was properly chargeable to appellee Fred Schnacke.

The appellant testifies that the appellee did not deny when he was informed that the Emslie mortgage was not paid off, that he was liable to pay or claim that the former should pay it, and this receipt is strong corroborating evidence to show that appellant is correct in his claims; again the settlements were made from time to time and the $1,500 was disposed of by charging appellee with $830 of the sum as paid on the Emslie note.   Appellant also assigns for error that the court below did not sustain his exceptions to the report of the special master and in which he claimed that the master should have subrogated his entire mortgage or claim to the original rights of Emslie under his mortgage and allowed his ten per cent. interest, the rate the debt in that mortgage was drawing. The basis of such claim is that the money which the mortgage in suit was given to secure was paid on a contract between appellant and appellee; that the Emslie mortgage was to be paid by appellee with the money borrowed for that purpose, and that as the statute of usury has been pleaded to the contract under his own mortgage that he has a right to resort to the Emslie mortgage to save himself from the consequences of such plea being sustained.   To sustain this view of the law counsel cite Gerwig v. Selberly, and Selberly v. Gerwig, 56 N. Y. 214, and Patterson v. Birdsdall, 64 N. Y. 294.

Upon an examination of those cases we find that by the statute of New York all contracts and securities which are the outgrowth of or dependent for their support and consideration upon agreements which are usurious are void.   Laws N. Y. 1837, Chap. 430; but the court in the Birdsdall case, *supra*, hold that obligations and securities having an independent existence untainted by usury are not affected by the statute though they are subjects of contracts tainted with the vice of usury, but it would seem according to the rule laid down in the case last named that it would be different " if it was a loan of money to the defendants and was so regarded by the parties and the interest was to release the mortgage debt and relieve the premises from the incumbrance."

In the case at bar, it was intended as a loan by appellant to appellee, and, according to appellant's own showing, he instructed appellee to make the satisfaction of the mortgage. It was not intended by the parties that this should be a purchase by appellant of the Emslie mortgage, but the amount was adjusted and account stated, and the $3,795.36 was intended to be paid by appellant to appellee or his agents, that he or they might satisfy the mortgage in full, although it turned out that the amount was not enough for that purpose, or some portion of the money loaned to appellee was not applied by him to pay in full, or there was a mistake in the calculation.    The balance due on the mortgage, remaining after the amount loaned by appellant had been applied as a credit on the mortgage, was purchased in by him, and he received the full amount of the principal and interest, or that sum out of the $1,500 paid in 1873, and, by his own act, applied in payment and satisfaction thereof.   So it will be seen that the Emslie mortgage, instead of being purchased and still subsisting, was long ago discharged and satisfied.   It would seem to us on principle, the interest alone being forfeited under the statutes of this State in case of usurious contracts, that if the appellant had first actually purchased the original Emslie mortgage and had afterward taken a new note and mortgage tainted with the vice of usury, even then, if allowed to resort to his old mortgage for security as against intervening pur-

Rosencrans v. Schnacke.

chasers and creditors, as between appellee and himself, the amount of the new notes without interest could alone be ground of recovery in a suit at law, and, in equity, six per cent. interest in addition could only be decreed to him by the way of doing equity, without reference to the Emslie mortgage. The original mortgage debt, in such case, would be merged in the new agreement.   In case a new note had been substituted bearing a less rate of interest than the old, or no interest at all, or the debt had become merged in a judgment, would it be contended that this new contract could be disregarded and the old mortgage resorted to and revived, with its larger interest?   That is precisely what happens when the contract is usurious, because the usurer puts himself in the power of the person contracted with, to compel him to take the principal sum without interest.   It appears to us that the usurer ought to be bound by the provisions of the new notes and mortgage in such a case. There could be no inequity in such a rule and the spirit of the law would be carried out, and the statute against usury sustained.   We think that the maxim of the law, that he who seeks equity must do equity, when applied to usurious contracts, is fully satisfied by compelling the party agreeing to usurious interest and seeking equity, to pay the principal sum and six per cent. interest.   Were the rule in equity to allow six per cent. interest in such case, not already established by judicial precedent, we would hold that, under the laws of this State, it ought not in any case to be sanctioned.   As a matter of sound principle, where the laws of the State forbid the taking of usury under the penalty of forfeiting all interest, what just claim can any one have, who violates the law, to relief in any court?   To grant such relief by a court is virtually to decide that the statute against usury is unjust and inequitable! What right have courts whose functions it is to decide what the law is, and not to make it or overrule it, to arraign a statute in such manner?   It appears to be sacrificing substance to form.   But we have no power to change the established rule in such case, but do not feel inclined to extend it farther for the relief of parties who violate the usury laws.

For the reasons above stated, we have come to the conclu-

sion that the report of the special master is, in every par-
ticular, correct and just, and that the court erred in sustaining
the exceptions to it, and decided correctly in overruling the
exceptions complained of by appellant. The decree is there-
fore reversed and the cause remanded with directions to the
circuit court to·overrule all exceptions to the special master's
report, and to enter an order approving it, allowing interest
accrued from the date of adjustment by the special master on
balances, up to the date of decree.

Reversed and remanded with directions.