604    APPELLATE COURTS OF ILLINOIS.

VOL. 102.] Trainor v. German-American Savings L. & B. Ass'n.

## John C. Trainor v. German-American Savings, L. and B. Ass'n.

1. USURY—*A Corrupt Agreement Necessary.*—To constitute usury within the prohibition of the law there must be intention knowingly to contract for or take usurious interest; for if neither party take it, but act *bona fide* and innocently, the law will not infer a corrupt agreement.

2. SAME—*Where the Contract upon its Face Imports Usury.*—Where the contract upon its face imports usury there is no room for presumption, for the intent is apparent; *res ipsa loquitur.*

3. SAME—*By Building and Loan Associations.*—A loan made by a building and loan association at more than the legal rate of interest is usurious if made at a premium not fixed at competitive bidding.

4. SAME—*Power of Courts of Equity to Purge Building and Loan Contracts of Usury.*—The circumstances attending the contract of a building and loan association, as well as the rights and relation of the parties, may be properly considered by a court of equity, and when settlements made by the parties with full knowledge of their rights, contracts may be purged of their usury.

Foreclosure of a Trust Deed.—Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge presiding. Heard in

the Branch Appellate Court at the October term, 1901. Affirmed. Opinion filed July 2, 1902.

CHARLES J. TRAINOR and ROY O. WEST, attorneys for appellant; FRED S. MOFFETT, of counsel.

W. J. LAVERY, attorney for appellee.

MR. JUSTICE WATERMAN delivered the opinion of the court.

This was a foreclosure proceeding.

Complainant filed its original bill December 21, 1897, and July 11, 1898, filed an amended bill.

The original bill sought to foreclose a trust deed executed April 12, 1893, by appellant and wife to complainant for $10,000.

To this Mr. Trainor filed an answer, and then his cross-bill, claiming over-payment and asking for a decree in his favor for the same against complainant.

This cross-bill was, July 18, 1901, dismissed on appellant's motion. After the filing of the amended bill appellant filed his substituted and sole answer, to which an amendment was made. This answer acknowledges the making of the " three first trust deeds," and denies that any accounting or settlement was ever accomplished, and charges that the loans were usurious, etc.

The cause having been referred to a master to take testimony and report, in accordance with such reference testimony was taken and a report made by the master, upon the coming in of which exceptions thereto filed by the complainant were sustained, and the cause was again referred to a master with instructions to take an account of the transactions had between the complainant and the said defendant, John C. Trainor, upon the following basis:

" 1st. The said defendant shall be charged with total amounts of money actually received by him from time to time upon any of the securities set out in the amended bill of complaint herein.

2d. The said defendant shall be charged with interest at the rate of six per cent per annum, upon such moneys so received by him, from the date the same were respectively

606    APPELLATE COURTS OF ILLINOIS.

VOL. 102.] Trainor v. German-American Savings L. & B. Ass'n.

received by him, the said defendant, down to the date of the master's report, hereinafter referred to.

3d.  The said defendant shall be charged with fines at the rate of ten (10) cents per share per month, which from the books of said complainant, it shall be shown the said defendant was liable for by reason of any default or defaults made by him in the payment of weekly dues under any of the trust deeds or agreements herein.

4th.  As against the sum total of such charges against the said defendant, the said master shall allow the said defendant credit for all payments on account of dues or interest, or fines, made by him to the said complainant from time to time since the date of the first trust deed in the amended bill of complaint herein set forth, with interest thereon from the days of payment down to the date of the master's report.

5th.  The said master is further hereby directed to deduct from the total amount of such credits herein firstly, secondly, and thirdly set out, the amounts of such payments herein fourthly above set out, and strike a balance of the amount due and owing from the said defendant to the said complainant on the 31st day of May, A. D. 1901, on which day the said master is hereby directed to return to this court his report of such findings herein, together with all the evidence taken in the original reference hereinbefore had in this cause, before William Fenimore Cooper, Esquire, one of the masters of this court to whom this cause on original and amended bills was herebefore referred to.

6th.  For the purpose of permitting the said defendant to have the benefit of all such credits as aforesaid, the court doth hereby direct that replication to the cross-bill herein filed on behalf of the above named complainant, to which answer has been interposed, shall be filed instanter, and said cause so made up on said cross-bill is also for such purpose hereby referred, with the issues made up on the amended bill and answer, to the said J. S. Hummer, Esq., one of the masters of this court."

June 4, 1902, on motion of counsel that court define what evidence the defendant may introduce under order of this court of May 6, 1901, and to extend time fixed in said order for hearing testimony and making master's report, it was ordered :

"1.  That defendant may introduce in evidence any and all facts which tend to and do attack the validity of com-

plainant's books of account and the correctness of entries made therein so far as the account of said defendant is concerned, and no other testimony shall be heard in said cause by said master on behalf of said defendant except,

2.   The said defendant may introduce in evidence his books of account, or data or memoranda showing entries of payments made to the complainant from time to time as said payments have been made by him to the complainant, and said master shall hear no other evidence on behalf of said defendant.

3.   The master is directed to file a full report of his findings in this court not later than July 1, 1901."

A report having been filed by J. S. Hummer, master, exceptions to this report were filed by appellant and appellee.   The exceptions of each were overruled and a decree entered in accordance with the finding and report of the master.   The decree contains findings of fact, nearly all of which are opposed to the contention of appellant in said cause, and support the decree of the chancellor.   The chancellor found that there was due to appellee from appellant the sum of seven thousand dollars and nine cents ($7,000.09), together with interest thereon at the lawful rate from the first day of July, 1901, the date of the report of the master. (The agreement for the payment of interest was for each loan at the rate of six per cent per annum.   The sum of three hundred dollars which the master found the complainant entitled to recover as solicitor's fees, was so found under the provisions of the instruments sued on.)   The decree, among other things, contained the following :

" That the original three loans, being the loans secured by the first three trust deeds, were tainted with usury, but that after the law of the State of Illinois affecting building and loan associations had been changed, so as to permit such associations to make loans on the level premium plan, the said defendant, John C. Trainor, with full knowledge of his rights in the premises, by the settlement and accounting had between the parties on the 12th day of April, 1893, ratified and confirmed all that had previously been done, but notwithstanding such ratification, the court, for the purpose of doing equity herein, finds that the defendant should be charged only with legal interest on the amount

608    APPELLATE COURTS OF ILLINOIS.

VOL. 102.] Trainor v. German-American Savings L. & B. Ass'n.

of money actually received by him, and not be charged with any premium whatever.

That the earnings on the stock of said complainant association never at any time exceeded the sum of three per cent per annum."

From the evidence it appears that appellant, on September 24, 1890, obtained a loan from appellee of $8,800, to secure which he executed a trust deed; that thereafter he obtained two other loans, one January 5, 1891, for $3,200, and one for $1,400, the last being made on February 16, 1891, and for each of such loans executed a trust deed; that for the total aggregate of $13,400 of these loans, appellant received but $10,700; an agreed premium of twenty per cent having been deducted from each, appellee being a building and loan association and appellant a member thereof, pledging in each instance stock owned by him for the payment of such loans; that the total weekly payments agreed to be made by appellant on such loans on account of stock pledged and owned by him, as aforesaid, amounted, after the third loan had been made, to the sum of $33½ per week, and the total payments of interest agreed to be made by him amounted, after the third loan had been made, to $66 per month.

The prompt payment of both interest and dues upon stock was, as is usual with building associations, attempted to be secured by provisions in the by-laws of the association, by fines in case of failure to make prompt payment upon the dates of the maturing of such weekly and monthly payments.

In the spring of 1893, April 12th, appellee, having decided to put into operation a new plan for the making of loans, appellant desired to avail himself thereof, and to have his loans changed from the plan upon which they were made to the new one then recently adopted by appellee. Appellee assented to this; a computation of the amount owing by appellant was made and a settlement arrived at, at which his indebtedness was fixed at $10,000, and April 12, 1893, appellant executed to appellee a trust deed to secure the said $10,000, and pledged for the payment thereof 100

shares of stock in 16th series " B," owned by him.   Under
the new agreement he was to pay upon the stock pledged
by him $12½ weekly, and the sum of $58.34 monthly. in sat-
isfaction of the interest upon said $10,000, which interest
was fixed at the rate of seven per cent per annum.   Neither
upon the first three loans nor under the trust deeds exe-
cuted in settlement of the first three loans did appellant
pay promptly either interest or amount due upon his stock,
and, in accordance with the by-laws, many fines were
imposed and charged to him on account of such failure.

It is claimed by appellant that the two trust deeds last
mentioned were executed in blank by appellant; the blanks
being thereafter filled in.   There was in said trust deeds an
interlineation of a few words.   Appellant denies that either
of the three last made trust deeds became binding upon
him.   It does not appear that he repudiated the obligation
of these trust deeds until after the filing of the bill in this
cause, nor does it appear that the blanks left therein when
the same were executed by him were filled up in any man-
ner not in accordance with the agreement theretofore
entered into as to the settlement and the making of said
trust deeds.   The words interlined do not appear to make
either of the instruments variant from the agreement or to
be important in this controversy.

The chancellor found that appellant signed the agree-
ment and trust deed dated April 12, 1893, after the blanks
in the same had been filled in and with full knowledge and
understanding of the contents thereof.   After the making
of the last mentioned trust deed it appears by the evidence
and the court found that appellant, being again in arrears as
to payments due to appellee, as a result thereof another
accounting and settlement was had between the parties.
Such accounting began on the 27th day of July, 1895, and
it appears, as was found by the court, that the same came
to an end and was closed up on the 1st day of October, 1895,
by the making of another trust deed dated July 27, 1895,
to secure the payment by appellant to the association of
the sum of $10,000, which upon the last settlement had been

610    APPELLATE COURTS OF ILLINOIS.

VOL. 102.] Trainor v. German-American Savings L. & B. Ass'n.

found and agreed to be due from the appellant to the association as of the date of July 27, 1895.

To further secure the same, appellant pledged to appellee eighty shares of the stock of the said association, number 389, series " B," and twenty shares of stock number 390, 26th series " B," then owned by him.

The court further found that prior to the execution of the trust deed last mentioned appellant caused an examination and comparison of his pass books, together with the books of account of the association, to be made by an expert accountant, and that such accountant, after such examination and comparison, submitted to appellant a report showing the result of his examination and comparison, and that appellant was at the time of the delivery of said trust deed, dated the 27th of July, 1895, fully conversant with the status of his account with said association.

In the year 1895, some time after July 27th of that year, appellant signed two other trust deeds, one to secure the payment of $8,000 and one to secure the sum of $2,000 to the association. It is admitted that blanks in each of the two trust deeds last mentioned were but partially filled at the time they were signed by appellant.

As to the binding force of the settlements and the trust deeds executed in pursuance thereof, appellant is or is not bound thereby. If he is, then his liability is to be determined in accordance with such instrument and trust deeds. If he is not, then the rights of the parties are to be determined by the loans and undertakings under the three first trust deeds. Appellant insists that the books of appellee, or rather excerpts therefrom, were improperly admitted in evidence. The transactions therein mentioned having been testified to by several witnesses, that is, the occurrence of the facts, fines, defaults, payments and disbursements therein set forth having been testified to by the bookkeeper of appellee and others, we think the books were properly admitted in evidence. The testimony offered by appellant as to payments by him made is largely wholesale in its character, that is to say, instead of its being positive testi-

mony to the payment of a sum or sums at a particular time and place and by handing to a particular person, officer or agent of appellee, it impresses us as principally in the nature of conclusions as to what the respective witnesses think must have been done.

The burden of proof as to payments claimed to have been made by appellant was upon him.   We do not think he has made out his case or overturned the evidence introduced by appellee. · We are not in the present controversy concerned with any question as to the proper acknowledgment of any of these trust deeds.   Appellee admits the execution of each and all of them save that as to the three last he insists they were in blank and not filled in in accordance with the agreement he entered into.   The corporation of which appellant was a member, was and is only for the mutual benefit of its stockholders.   It had and has no capital or funds with which to carry on business or discharge its obligations except such as arises from the sale of stock to members and the payment of interest on loans in a manner similar to that agreed to by appellant.   The chancellor found that the original loans were usurious because made at a premium not fixed by competitive bidding.   The court, deducting the entire usurious interest and starting the account at the sum of $10,700, being the money actually received by appellant, directed an account to be stated in accordance with that which to the court seemed an equitable disposition of the matter.

The great diversity existing between the claims of the respective parties and the reports of the respective masters to whom this cause was referred, arises in part out of the usury in the transaction, but almost altogether out of a difference of opinion as to that which the evidence discloses as to the amount of payments made by appellant as well as to the sum of the respective fines properly chargeable to him.

It is said by the Supreme Court of the United States in United States Bank v. Waggener, 9 Pet. (U. S.) 378 :

" To constitute usury within the prohibition of the law there must be an intention knowingly to contract for or

612     APPELLATE COURTS OF ILLINOIS.

VOL. 102.] Trainor v. German-American Savings L. & B. Ass'n.

take usurious interest; for if neither party take it, but act *bona fide* and innocently, the law will not infer a corrupt agreement." " Where the contract upon its face imports usury there is no room for presumption, for the intent is apparent; *res ipsa loquitur.*"

In the present case the contracts do not, upon their face, import usury; nor does the evidence show that there was an intention by either party to enter into usurious agreements. Appellee, being a building society, could in a proper manner lawfully loan money upon terms that for ordinary parties would be usurious; it might have made the loans under consideration upon the terms it did, had it proceeded in a different manner; its mistake was probably due to a misapprehension of the law. While we do not regard this as rendering the contracts originally made as other than usurious (Webb on Usury, Secs. 33, 34 and 35), we are of the opinion that the circumstances attending the entire matter, as well as the relation and rights of the parties, may properly be considered by a court of equity in arriving at a conclusion as to that which, in view of the settlements by the parties thereafter made with full knowledge of their respective rights, ought to be done; and we are of the opinion that contracts of this kind may thereafter by agreement of the parties be purged of usury. Phillips v. Columbia Building Association, 53 Iowa, 719; Pike v. Crist, 62 Ill. 461; Webb on Usury, Secs. 481, 482, 483, 485.

The decree in this cause was entered on the 29th day of August, 1901. An appeal to this court was taken and perfected, the record being filed here November 29, 1901. During the month of May, 1902, many terms after the entry of said decree, the Circuit Court, at the May term of 1902, entered, upon due notice, an order amending the decree of the August term, 1901. This order contains a recital to the effect that the decree is amended upon production of the notes taken by the stenographer who reported the cause for the parties at the time of the entry of said decree, August 29, 1901, and therefrom the decree is amended in substance so as to add to the recital of the matters and things upon which the cause came on to be heard by the

chancellor the following : " the reports of William Fenimore Cooper and John S. Hummer, the masters in chancery of this court to whom this cause has been successively referred, the exceptions to the report of the master last named being hereby overruled and the report last mentioned being in all respects approved and confirmed; and upon the oral testimony of the witnesses, Joseph Schlenker and Herman Muchleiser, this day taken in open court," and by striking out from the recital as to the matters and things upon which the cause came on to be heard the following: "and also upon the cross-bill of the said defendant, John C. Trainor, and the answer of said German-American Savings Building Association to said cross-bill." This order is made *nunc pro tunc* as of August 29, 1901. Appellee asks to have this order of amendment filed and considered herein; to this appellant objects.

We do not regard the order or the amendment, if it had been made at the entry of the decree, as that which would have affected the rights of the parties or the determination of the appeal of this court.

It appears by the record that the cross-bill of appellant was dismissed shortly before the entry of the decree. The answer of appellee thereto had then no further use or purpose, and the recital in the decree that the cause was heard, among other things, upon such cross-bill and answer, was a manifest misprision of the clerk.

So, too, the decree plainly shows that the cause had been referred to William Fenimore Cooper, master, and that he had made a report and that exceptions thereto had been sustained and that thereafter the cause had been referred to John S. Hummer, master; that he had made a report and that his report had been accepted by the court as correct. The only thing not appearing in the record as existing at the time of the entry of the decree August 29, 1901, is the fact that the oral testimony of two witnesses was heard by the chancellor in open court on the day and before the entry of the decree, which testimony is not preserved by a certificate of evidence.

We are satisfied, for reasons hereinbefore set forth, that the decree in this cause entered August 29, 1901, should be affirmed. The order of amendment contains nothing that would affect our determination in this regard.

The decree of the Circuit Court is therefore affirmed.