## Louis D. Garlick et al. v. Mutual Loan and Building Association.

### Gen. No. 4,703.

1. REMANDMENT—*when directions given upon, abandoned.* The benefit of directions given upon remandment of a cause is abandoned by filing an amended pleading inconsistent therewith.

2. BOOKS OF ACCOUNT—*when competent.* Books of account are competent where shown to be books of original entry, and to be true and correct, by the testimony of a person who made the entries therein.

3. ACKNOWLEDGMENT—*effect of act of May 15, 1903.* An acknowledgment taken by a stockholder of the corporation grantee, though invalid when made, is validated by the act of May 15, 1903.

4. MASTER IN CHANCERY—*when reference should be made to state account.* The Appellate Court should not be left to determine by its own computation the correctness of a statement of account upon which a decree of foreclosure has been predicated; but the court below before entering a decree should refer the cause to the master to make computation, and the means by which the result of the computation was arrived at should be preserved in the record.

5. HOMESTEAD LOAN ASSOCIATION—*law with respect to loaning of money.* Prior to the amendatory act of 1891, such associations could only loan by competitive bidding; after the amendatory act of 1891 and until the amendatory act of 1893, associations organized prior to 1891 could not loan money except by competitive bidding.

6. HOMESTEAD LOAN ASSOCIATIONS—*how by-laws of, must be amended.* A homestead loan association can only amend its by-laws at a meeting of its stockholders, and amendments not so made are void.

7. Homestead loan association—*when exempted from opera-tion of usury laws.* Such associations are only exempted from the usury laws when their contracts for interest and premiums which exceed the lawful rate, are made according to the provisions of the homestead loan association act.

8. Interest—*complainant asking relief from usury required to pay.* In equity a complainant seeking relief from usury is required to pay the legal rate of interest.

Foreclosure proceeding. Error to the Circuit Court of Will county; the Hon. Albert O. Marshall, Judge, presiding. Heard in this court at the April term, 1906. Affirmed in part, reversed in part and remanded with directions. Opinion filed November 9, 1906.

**Statement by the Court.** This writ of error is sued out to reverse a decree entered on the cross-bill of defendant in error praying for the foreclosure of a mortgage dated September 15, 1896, upon certain real estate therein described to secure the payment of a note for $11,600 with interest at eight per cent. per annum, and for the foreclosure of a subsequent quit-claim deed of the same real estate, alleged to have been given as further security. The cross-bill alleges that at the time of making said loan said Louis D. Garlick assigned to cross-complainant 116 shares of stock in said association of which he was the holder. The cross-bill further alleges that complainant therein is a corporation organized under the statute of Illinois entitled ''An act to enable associations of persons to become a body corporate to raise funds to be loaned only among'' their members, in force July 1, 1872; ''that according to the methods of business allowed by said statute and established by said charter and by-laws the funds in the treasury of said association are loaned monthly at stated meetings thereof to its stockholders exclusively in amounts not to exceed $100 per share, each loan being awarded to the stockholder who bids the highest premium for the preference or priority of loan;'' that loans are required to be secured by the assignment to the association of the shares of

stock loaned on, and by a mortgage on unencumbered real estate; that on improved property a policy of insurance is required payable to the mortgagee; that such premiums, interest and fines are free from usury; that in case of default for six months said association may proceed to enforce its securities by law; that Louis D. Garlick made default in the payment of monthly dues on said 116 shares of stock and interest for six months; that on August 31, 1899, there was due on said note $12,715.32 and the real estate mortgaged being scant security for the payment of said sum, defendants executed a quit-claim deed of said premises to cross-complainant, and cross-complainant executed a contract agreeing to reconvey said property to Louis D. Garlick upon the payment of $10,000 in semi-annual payments of $500 on the principal, and interest at six per cent. per annum, payable $50 per month; that defendant has failed to make said payments and cross-complainant has declared the same forfeited; and it prays that the same may be foreclosed.

The original bill, when the case was in this court before, alleged that on November 28, 1885, Louis D. Garlick, complainant therein, borrowed of defendant $700 secured by a mortgage on real estate; that on August 7, 1889, said $700 loan was merged in a new loan of $5,000 secured by mortgage on real estate; that complainant only received $4,000 on this loan, $1,000 being retained for premium; that on May 11, 1893, all amounts due from complainant were merged in a new loan to him of $10,000 secured by mortgage on real estate, which last mortgage included all moneys advanced by defendant to that date; that from this loan complainant received only $8,000; that defendant retained $2,000 of said $10,000 for premium, besides charging eight per cent. interest; that on September 15, 1896, all amounts due from complainant were merged in a new loan of $11,600 secured by mortgage on real estate, which last mortgage included all moneys ad-

vanced by defendant to that date; that on August 31, 1899, complainant with his wife, Maria D. Garlick, executed a quit-claim deed to defendant, and defendant gave complainant an agreement to reconvey to him upon the complainant paying $10,000 in semi-annual installments of $500 and interest at six per cent., payable monthly. Complainant averred he did not owe the amount stated in said agreement for a reconveyance, and that he had practically paid all he owed; and he prayed for an accounting, and that a reconveyance be decreed upon payment of what may be found due from complainant.

The defendants to the cross-bill in their answer alleged that the association charged them large sums of money for premium and interest, and that said contract and said premium and interest charged are usurious; that under the laws of said association loans were made to its members by members bidding for the same, but that in no case did defendant, Louis D. Garlick, bid for any of the loans made to him, nor was he required or permitted to bid. They denied signing the note and the mortgage and the quit-claim deed described in the cross-bill, and alleged that the same were obtained by fraud.

After the case was remanded to the Circuit Court complainant in the original bill amended his bill by alleging that the $700 loan was not merged in the $5,000 loan, and that the $5,000 loan was usurious; that said $5,000 loan was not included in the $10,000 loan; that the $10,000 loan was usurious, complainant only having received $8,000 on it, and that interest was charged on $10,000 at the rate of eight per cent. per annum; that all said mortgages and the quit-claim deed were acknowledged before a notary public who was an officer in said association and that said acknowledgments were void. The defendant to the original bill amended its answer by stating that the loans were made under a by-law of the association, but

did not state what that by-law was; and it denied all the charges of fraud and asserted that the loans were regular and valid.

The cause was heard by the court, and a final decree made without a reference to the master. The decree finds that the $700 and the $5,000 loans were made in conformity with law by plaintiff in error bidding for said loans; that the $700 loan was fully paid off; that plaintiffs in error executed the note and mortgage of September 15, 1896, and the quit-claim deed of August 31, 1899, and that the said deed is a mortgage, and that on August 31, 1899, Garlick was not indebted to the association in the sum of $10,000, as recited in the contract, but in the sum of $7,650, and that interest at the rate of five per cent. per annum should be charged from that time; and that on December 1, 1905, after giving credit for payments made since August 31, 1899, there was due $8,344.43; and a reconveyance was decreed on the payment of said sum due with interest at the rate of five per cent. per annum from December 1, 1905, and in default of payment that said premises or so much as is necessary be sold to satisfy the decree and costs.

E. C. HALL, for plaintiffs in error.

J. W. DOWNEY, for defendant in error.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This case was in this court before, and is reported in 116 Ill. App. 311, where the case is fully stated as it then appeared. It was at that time reversed and remanded for further proceedings not inconsistent with said opinion, but the remanding order seems to have omitted the directions then given. Plaintiff in error, upon the case being redocketed in the Circuit Court, abandoned the benefit of those directions by filing an amended bill.

Garlick v. Mutual Loan & Building Association.

It is assigned for error that the defendant was permitted to introduce in evidence its books of account with plaintiff. Defendant did not offer any books except such as the person who made the entries therein testified were books of original entry, and that the entries were true and correct and made at the time. With this preliminary proof they were properly admitted. They were also competent evidence under the statute. Section 15, Evidence Act; Mandel v. Swan Land Co., 154 Ill. 177; Trainor v. German Savings L. & B. Assn., 102 Ill. App. 604.

It is also assigned for error that the mortgages and the quit-claim deed were each acknowledged before a notary public who was an official in the defendant association. There are no conveyances to any third parties involved. The act of May 15, 1903 (Hurd's Stat. 1903, p. 447), has been held to legalize acknowledgments of deeds and mortgages made to corporations when the officer taking the acknowledgment was at the time of taking the same a stockholder in such corporation, and that an instrument so acknowledged would convey dower and homestead interests notwithstanding such acknowledgment was invalid when taken. Maxwell v. Lincoln Building Association, 216 Ill. 85.

It is alleged in the original bill filed by Louis D. Garlick that he and his wife executed and delivered the mortgage of September 15, 1896, and the quit-claim deed of August 31, 1899. In the answer to the cross-bill Garlick and his wife both deny that they executed said instruments and allege that they were obtained from them by fraud. The Circuit Court correctly found from the evidence that they knowingly and understandingly executed these instruments, and there was no error in that finding. Plaintiffs in error assign for error that the Circuit Court should have found the $5,000 mortgage of August 7, 1889, and the $10,000 mortgage of May 11, 1893, usurious. The court found that plaintiff only received $4,100 on the

$5,000 loan and "that said loan was made in conformity with the requirement of law," which means that it was not usurious. The court found that on the $10,-000 loan plaintiff received $8,000, but does not state whether the loan was legal or illegal, usurious or otherwise. The court then found that the $11,600 loan of September 15, 1896, was made and included all indebtedness of plaintiff to defendant at that time, and that plaintiff failed in making the agreed payments, and that on August 31, 1899, when the quit-claim deed was made and a contract given to reconvey on the payment of $10,000 by the Garlicks, they only owed $7,650 to defendant, and that from that time interest be computed at the legal rate. There is no statement in the decree showing what finding the court made upon the charge of usury in the mortgage of May 11, 1893. We are of the opinion from the amount found due by the court on August 31, 1889, that it was intended to declare that loan usurious. A finding on that question should have been incorporated in the decree, so that there would be no doubt as to what the court did decree upon the subject.

Both the original bill and the cross-bill prayed for an accounting. The accounts are very long and complicated, running over fifteen years, with monthly payments of interest, and, at times, of principal and interest, with a controversy over the amounts and dates of payment. To determine how much was due it was necessary for some one to make many complicated computations of interest, because of the frequent partial payments. No such computation appears in this record. The court, after it had entered a decree determining the legal questions involved and the basis of liability, should have sent this cause to the master with directions to state the account, and then upon the statement of such account by the master either party could have objected to such account and pointed out in what items it was claimed there was error. As

the case now stands, the entire calculation must be performed by the Appellate Court to see if the amount finally arrived at in the decree is correct, before we can affirm it. After the evidence was substantially all heard by the chancellor, he announced that he would enter an order referring the case to the master, and thereupon the following stipulations were made in open court:

"It is stipulated by and between the parties to this case, by their respective attorneys, that the itemized statements of the $700 loan, the $5,000 loan ,the $10,-000 loan, the -$11,600 loan, and the transactions under the contract for a deed, are true and correct copies of the books of defendant association with reference to said transaction, and that no objection is made to said statements on account of the same not being the books of original entry; and that only the specific items represented in the receipts showing payments made by Mr. Garlick which it is claimed have not been accounted for by the association shall be added thereto, and that these statements and receipts shall be submitted to the court for his decision."

This was followed by seven pages of tabulated matter, showing many entries of payments of principal, interest, dues and fines. This was not a stipulation that the account should be stated by the court and not by the master, though it seems to have been so understood by the court and may have been so intended by counsel; but even if the stipulation had been that the account should not be stated by the master, and the court had been willing to take upon itself that labor, still the rule as laid down in Moss v. McCall, 75 Ill. 190, is that, "Counsel will not be permitted, by stipulation or otherwise, for their own convenience to impose upon an appellate court the performance of duties that pertain to the office of master in chancery. Where accounts involve large sums of money, and the testimony as to the rights of the parties is conflicting and unsatisfactory, in conformity with the rules of

chancery practice the cause must be referred to a master to render a concise and accurate statement so that the same may be readily comprehended, and any objection taken passed upon understandingly." Moshier v. Norton, 83 Ill. 519; French v. Gibbs, 105 Ill. 523; Daily v. Catholic Church, 97 Ill. 19; Beale v. Beale, 116 Ill. 292; Ennesser v. Hudek, 169 Ill. 494. The seven pages of statements from the books of the association, admitted under said stipulation, contained nearly three hundred and fifty items of payments of principal, interest, dues and fines, made on many different dates. There was also proof of other payments not shown upon said statements. The payments made upon the $5,000 loan before the consolidation must be applied pursuant to the statute governing such bodies and the by-laws of the association. Those made upon the $10,000 loan before the consolidation, and those made upon the entire loan as consolidated, must be treated as payments made upon an usurious loan where the debtor is liable for statutory interest. It is obvious that under the rule laid down in the cases above cited the parties cannot, by agreement, be permitted to impose upon the chancellor or upon a court of appeal the labor of making computations of interest where such a multitude of partial payments are involved. Such extensive computations must be made by the master.

The cross-bill has not been amended in any particular since the case was in this court before. The complainant in the original bill, while he has alleged facts varying from the allegations at the first hearing, has not stated or proved any facts which require the application of any principles of law or equity differing from those announced in our former opinion. Plaintiff in error admits he bid at a regular meeting for the $700 loan, but that loan is admitted by both parties to have been regularly paid off, and therefore there is no question before us as to that loan. Plaintiff in error

Garlick v. Mutual Loan & Building Association.

denies bidding for the $5,000 loan. Clare, who was a clerk for the defendant in error at the time of the making of the $5,000 loan, testifies that Garlick was present at the meeting of July 23, 1899, at which that loan was made, and that Garlick bid for that loan. Directors who were present at that meeting say no loans were made at that time except upon bids. The record of the meeting of July 23, 1899, of the association shows that loans were made at premiums of from seventeen to twenty per cent., Garlick getting his loan at a premium of eighteen per cent., and we are satisfied that that loan was made in accordance with the statute at that time in force concerning building associations, and that, Garlick being a stockholder and having bid for the loan, there was no usury in it. There has been no change in the evidence concerning the method of making the $10,000 loan since the former opinion of this court. The only change in the original bill as to this loan is that plaintiffs in error now allege the former loans were not included in it, and such is the proof. The act concerning homestead loan associations was amended in 1891, permitting such associations organized subsequent to that time to adopt a by-law providing that "any such association may by its by-laws dispense with the offering of its money for bids in open meeting, and in lieu thereof loan its money at a rate of interest and premiums fixed by its by-laws, and either with or without premiums, deciding the preference or priority of loans by the priority of the applications for loans of its shareholders." There was no provision of the statute by which such associations organized before that time might adopt such method of making loans, and all associations organized prior to that time were prohibited from making loans in any other manner than by open competitive bidding, until the legislature of 1893 amended the act permitting such associations after July 1, 1893, to adopt the level premium method. The

act of 1891 provided that such associations heretofore incorporated might avail themselves of all the powers conferred by that act, but did not provide any method for amending their charters (of which the by-laws were then a part), so as to avail themselves of the act. The act of 1893 provided that alterations of the by-laws might be made by the association adopting an amendment, and submitting such amendment to the secretary of state, and the same being approved by the attorney-general, and the recording of the same in like manner as the original by-laws, and that only such by-laws as have been submitted, approved and recorded shall be operative.   It is proved that at a joint meeting of some of the directors of defendant association and of directors of a similar association in Joliet, in July, 1891, an agreement was made that both associations should adopt the level premium plan and the same premium. At a meeting of the directors of defendant association in December, 1891, a motion was made and carried, "that the by-laws be amended according to the amendment submitted; that interest on all loans hereafter should be eight per cent. and the premiums on all loans shall be twenty per cent." No record was ever made of any such amendment, and there is no evidence that any such amendment was ever submitted to the secretary of state or approved by the attorney-general or ever recorded anywhere, and so far as appears it was never printed in the by-laws of defendant.   Such associations can under the statute only adopt by-laws at a meeting of the stockholders. There is no proof that the stockholders in defendant association ever passed any amendment to its original by-laws concerning its method of making loans, or that they were ever notified of the action of the directors.   There was, therefore, no by-law ever adopted, changing the original by-law by which loans were made at competitive bidding, to the level premium plan.   In addition to what has

been said, the defendant in its cross-bill does not allege that it had at any time a level premium by-law, but alleges that "the funds of said association are loaned monthly at stated meetings thereof to its stockholders, exclusively in amounts not exceeding $100 per share, each loan being awarded to the stockholder who bids the highest premium for the preference or priority of loan." Such associations are only exempted from the usury laws when their contracts for interest and premium which exceed the lawful rate are made "according to the provisions of this act." Borrowers' Building Assn. v. Eklund, 190 Ill. 257; Jamieson v. Jurgens, 195 Ill. 86; Fritze v. Equitable Society, 186 Ill. 195; Garlick v. Mutual B. & L. Assn., 116 Ill. App. 311; 4 Am. & Eng. Ency. of Law (2d ed.) 1074 and note. As the loan of May 11, 1893, was not let at a competitive bidding as alleged in the cross-bill and was not made in accordance with the by-laws of defendant association and the statute, we must adhere to our original opinion in this case that it was usurious. The original loan being usurious, all renewals thereof, or of which the usury made a part, are tainted therewith. The plaintiff only having received $8,000 on the loan made May 11, 1893, upon an illegal and usurious plan, should only be charged with that amount.

The cross-complainant by its cross-bill seeks to foreclose the mortgage dated September 15, 1896, securing the note for $11,600 which is further secured by the assignment of the 116 shares of stock Garlick held in the loan association and further secured by the quitclaim deed conveying to cross-complainant the same premises described in the said mortgage of September 15th. The consideration for the note and mortgage, stock and deed sought to be foreclosed was the payment of the usurious loan of May 11, 1893, and the nonusurious loan of August 7, 1889. The cross-complainant does not ask for any relief based upon or even mention the original mortgages in its cross-bill. After

the execution of the $11,600 note and mortgage, Garlick made payments varying in amounts from $10 to $500 almost monthly for more than six years. These payments were applied upon the $11,600 note that was given in satisfaction of the original loans. The new note and mortgage having an usurious foundation in part, we are unable to discover any rule of law or equity by which to equitably divide the payments so made an apportion part to the payment of the original usurious loan and part to the original non-usurious loan. The whole of the new note must be considered as tainted with usury from the date of such commingling and only legal interest be computed on the amount due from Garlick at the time of making the $11,600 note. The plaintiff in error, having begun these proceedings in equity and offering to pay what is due, must do equity and must pay legal interest upon the money he received. Rosencrans v. Schnacke, 13 Ill. App. 216; Barnard v. Cushman, 35 Ill. 451.

We affirm so much of the decree as finds that the loan of November 27, 1885, is paid; that the loan of August 7, 1889, was not usurious, and that the several mortgages and the quit-claim deed were valid and effective to convey and mortgage all the interests of plaintiff in error in the premises. The rest of the decree is reversed for the failure to refer the cause to the master to state the account between the parties, and we remand the cause to the court below with directions to enter a decree finding expressly that the loan of May 11, 1893, was usurious, and to refer the cause to the master in chancery to state the account between the parties upon the evidence embodied in the certificate of evidence now on file and upon such further evidence as to the state of the account as either party may offer.

The decree will direct the master, first, to compute and ascertain the balance due on the $5,000 loan on September 15, 1896, according to the contract between

the parties and the by-laws of the association; second, to compute and ascertain the balance due on September 15, 1896, on the loan of May 11, 1893, treating the principal of the loan as $8,000 and charging interest thereon at five per cent. per annum, crediting all payments thereon and computing interest in accordance with the rule laid down in McFadden v. Fortier, 20 Ill. 509, and Heartt v. Rhodes, 66 Ill. 351; third, to add together the total sum remaining unpaid on September 15, 1896, on the $5,000 loan and the principal then remaining unpaid on the loan of May 11, 1893, and treat the sum as a new principal bearing interest at five per cent. per annum from September 15, 1896; fourth, to apply payments made after September 15, 1896, first to the discharge of the interest remaining unpaid on September 15, 1896, on said loan of May 11, 1893, and then to the discharge of interest on the new principal formed as aforesaid on September 15, 1896, computing such interest and applying such payments in accordance with the rule above referred to; fifth, to charge plaintiffs in error with disbursements made by defendant for insurance and any other lawful charges against the property, with interest thereon at the rate of five per cent. per annum; and sixth, to state and report the account between the parties in accordance with such directions, with such further proofs as may be taken upon such accounting.

The court below will then take such further proceedings as to equity appertain, not inconsistent with this opinion.

*Affirmed in part, reversed in part, and remanded with directions.*